594 P.2d 750

**Wallace A. WENDELL and John P. Varsa d/b/a Wendell-Varsa & Associates, Plaintiffs-Appellees,**

v.

**James H. FOLEY, Old Town Development Company, Defendants-Appellants,**

**Reliable Productions, Inc., Intervenor.**

No. 3464.

Court of Appeals of New Mexico.

April 10, 1979.

Writ of Certiorari Denied May 3, 1979.

OPINION

WALTERS, Judge.

Wolfson was president of Lobo Hijo Corporation (Lobo). Lobo Hijo was the general partner of Freeway Old Town, Ltd. (Freeway), and Freeway was the general partner of Old Town Development Company (Old Town). Plaintiff Wendell-Varsa and Associates (W–V) contracted in July 1972 with Freeway to provide architectural services for construction of an Albuquerque hotel. Freeway's obligation under the contract was assumed by Old Town on September 9, 1973. Wolfson managed the affairs of Freeway, Old Town and Lobo. Varsa, of W–V, was Wolfson's stepson and was a shareholder, director or officer of Lobo during the entire period of the contract and at the time of the trial. W–V sued Old Town for unpaid billings which included two promissory notes executed by Wolfson on behalf of Old Town.

The architectural contract provided a fixed fee for basic services, with additional approved services to be compensated at $15.00 per hour. It required that any amendments to the contract and any authorizations to the architect for additional services had to be made in writing. The only request made by Wolfson in writing for services outside the basic contract was for W–V to hire a kitchen consultant. Wolfson, however, approved change orders prepared by W–V for display boards, for furniture layouts and interior consultation, for preparation of information and drawings connected with 109 items in six change orders at $25.00 per hour, and for project representation beyond the basic services required by the contract by W–V at the hourly rate of $25.00. W–V submitted periodic bills covering those items, which Old Town was unable to pay. Ultimately, in April and June 1975, two promissory notes were executed by Wolfson on behalf of Old Town to cover the amount of W–V's billings, aggregating $39,464.70, plus interest. W–V thereafter rendered two more bills for additional services performed by W–V under a separate contract (termed "Lobby Expansion" contract by the parties). At time of

Quincy D. Adams, Adams & Foley, Albuquerque, for defendants-appellants.

Lewis O. Campbell, Campbell, Cherpelis & Pica, Albuquerque, for plaintiffs-appellees.

trial neither the lobby billings of $10,771.63 nor the notes had been paid.

The trial court found that Wolfson had authority to approve additional services, to agree with W–V for such services, and to execute the notes on behalf of Old Town. It concluded that the promissory notes were given for antecedent debts and therefore did not require consideration. Judgment in the amount of the notes, plus interest and attorney fees, and for the unpaid billings on the lobby contract was entered against Old Town.

This appeal has been brought by Old Town asserting error in the amount awarded for (a) failure of consideration, and (b) lack of authority in Wolfson to orally approve additional services. Old Town contends that $23,528.75 of the total covered by the notes should have been disallowed, because services represented by that amount were not additional but required under W–V's basic contract. It further claims that in any event billings should have been at $15 per hour, not $25; and that none of the change orders were made by written request of its agent. Old Town argues there was a failure of consideration for the alleged underlying "antecedent debt." Alternatively, it contends that Wolfson had no authority to orally modify the contract in 1974 to provide for a different hourly rate of compensation, and Old Town should not be bound by his agreements to pay.

■ We note, first of all, that the contract did not require a written request for additional services; it merely provided that additional services be authorized in writing. Wolfson authorized all such services when he approved the submitted change orders and the bills covering them.

W–V argued in the trial court that because under § 3–408 of the Uniform Commercial Code (§ 55–3–408, N.M.S.A., 1978) no consideration is necessary for an instrument that is given in payment of an antecedent debt, the court could not look behind the promissory notes in deciding the claim of W–V.

■ The UCC does provide that no consideration is needed to support a note given in payment of an antecedent debt. But a review of the decided cases under this section of the Act indicates that they follow the official comment, which also accompanies our statute, and accept that this provision was enacted "to change the result of decisions holding that where no extension of time or other concession is given by the creditor the new obligation fails for lack of legal consideration. It is also intended to mean that an instrument given for more or less than the amount of a liquidated obligation does not fail by reason of the common law rule that an obligation for a lesser liquidated amount cannot be consideration for the surrender of the greater." This commentary makes it clear that the consideration under discussion refers to a new quid pro quo between transferor and transferee of the negotiable instrument. There need be none at all from the person to whom the instrument is given to permit substitution of a note instead of cash from his debtor. The terms of the note then become the debtor's obligation. But when the debtor and payee are the immediate parties in the lawsuit, and the debtor contests payment of the note on grounds that the underlying debt does not exist in whole or in part, or came about through fraud in the inducement or, as here, because the debtor's agent exceeded his authority in a manner known to the creditor-payee, then the debtor may attack payment demanded on the instrument by showing that the creditor is not a holder in due course and is subject to defenses available against one who is not a holder in due course, such as taking without value, with notice of defenses, or in bad faith. *See, Community Bank v. Ell,* 278 Or. 417, 564 P.2d 685 (1977); *Estate of Wetmore,* 36 Ill.App.3d 96, 343 N.E.2d 224 (1976); *Mecham v. United Bank of Arizona,* 107 Ariz. 437, 489 P.2d 247 (1971); *Greenberg v. Morris,* 436 S.W.2d 734 (Mo.1968).

Unfortunately, counsel on appeal (who was not counsel for Old Town at trial) failed to point out any evidence other than six answers given by Mr. Varsa, not favor-

able to appellant's theories, in the 141 pages of appellee's testimony; and although we have undertaken the arduous task of reading the entire record and the voluminous exhibits accompanying it, we are unable to find a single word supporting Old Town's contentions that Wolfson was without authority to approve the change orders and requests for payment submitted by W–V; without authority to modify the contract; without authority to execute the promissory notes; nor that W–V, by failure of value, good faith, or lack of notice of defenses against the notes, was not a holder in due course.

 We affirm the trial court for three reasons: (1) Old Town offered no witnesses nor evidence to prove that the "additional services" for which W–V billed actually were "basic services" required under the architectural contract. Wolfson's deposition was received in evidence; in it he testified that all of W–V's change order billings covered additional services. Varsa, one of the partners of W–V, was the only witness called at trial and, as should have been expected, he corroborated his firm's billing as proper charges for additional services. Old Town did not produce an expert or any other witness to analyze the change orders or contradict the witnesses' categorization of the work as additional services rendered under the change orders. In the absence of any evidence in the trial court, appellant's theory of improper charges cannot be considered on appeal, *Laguna Dev. Co. v. McAlester Fuel Co.,* 91 N.M. 244, 572 P.2d 1252 (1977). A party cannot assert an affirmative defense and expect relief thereon without presenting any evidence on the matter, *Wallace v. Wanek,* 81 N.M. 478, 468 P.2d 879 (Ct.App. 1970).

 (2) Wolfson testified that as president of Lobo Hijo and general partner of Freeway, he had authority to manage the contract for construction, and the limited partnership agreement attached to his deposition bore out that testimony. The general partner was given "control over the daily business of the limited partnership" to the

exclusion of the limited partners, and he was endowed with broad powers to complete the project, hire contractors, borrow money, and exercise all the powers of a general partner under the New Mexico Uniform Partnership and Limited Partnership Acts. There was no evidence produced by Old Town that might have shown that Wolfson violated any of his contractual or fiduciary duties to his limited partners, or that he acted beyond his authority. A defendant has an obligation to present evidence on his theories of defense. *Laguna, supra.*

 (3) In the absence of any restriction on Wolfson's powers to represent Old Town, and even though the contract required all modifications to be in writing, it is the general rule that, in the absence of a prohibiting statute, a written contract may be orally modified by the parties who made the original agreement, *Canada v. Allstate Ins. Co.,* 411 F.2d 517 (5th Cir. 1969); and, even if within the statute of frauds, it is enforceable if adherence to the original agreement "would be unjust in view of a material change in position in reliance on the subsequent agreement." Restatement (Second) of Contracts, § 224 (Tent.Draft 1973). Our Supreme Court, although not ruling directly on the question, has indicated in *Mercury Gas and Oil Corp. v. Rincon Oil and Gas Corp.,* 79 N.M. 537, 445 P.2d 958 (1968); *Tyner v. DiPaolo,* 76 N.M. 483, 416 P.2d 150 (1966); and *Driver-Miller Plumbing, Inc. v. Fromm,* 72 N.M. 117, 381 P.2d 53 (1963), that there may be parol modification of a written contract. Professor Corbin unequivocally states the rule to be that "[a]ny written contract . . . can be rescinded or varied at will by oral agreement of the parties; . . . even . . . a written agreement that the contract shall not be varied or rescinded," unless the oral transaction itself is one enumerated within the statute of frauds, 6 Corbin, Contracts 206, § 1295. Consequently, Wolfson and Varsa, for W–V, had the power to modify the original contract, and they did so. Old Town urges us to consider the personal relationship of Varsa and Wolfson, the cir-

cumstances of the amendment of the contract having been negotiated between themselves and without consultation or approval of any other limited partner or corporate officer, Varsa's business interest in Lobo Hijo's corporation, W–V's billing on July 31, 1975 after the claimed oral modification, at $15.00 per hour instead of $25.00; and to conclude that the architect breached a fiduciary duty to the owner to perform with loyalty in the best interest of his employer, as did Wolfson breach his fiduciary duty as a general partner to act in the best interest of his limited partners. Old Town suggests that, instead, Wolfson and Varsa colluded to increase W–V's contract fees at the expense of the limited partners, thereby committing a constructive fraud upon Old Town.

■ These considerations were presented to the trial court in the form of requested findings, and were denied. Rightly so, for as we have noted, Old Town failed to present any evidence on those issues. There was nothing before the court to support the claims and insinuations that Varsa's interest in Lobo Hijo was enhanced by the modified contract; that Wolfson exceeded the boundaries of his authority; that either party acted in bad faith. More than innuendo is required to show fraud, *Barber's Super Markets, Inc. v. Stryker*, 84 N.M. 181, 500 P.2d 1304 (Ct.App.1972), and whereas the relationship and circumstances here are of a nature from which constructive fraud could occur, Wolfson and Varsa—the only witnesses heard in the trial court—satisfactorily explained the reasons for modifying the original contract, for making and approving change orders, and for executing the promissory notes. Moreover, fraud must be shown by clear and convincing evidence, which certainly was lacking in this case. *See Hockett v. Winks*, 82 N.M. 597, 485 P.2d 353 (1971).

■ The challenged findings of the trial court are supported by substantial evidence and this court will not reweigh the evidence, or pass upon the credibility of the witnesses, in order to reach a different result. *Platero v. Jones*, 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971); *Svejcara v. Whitman*, 82 N.M. 739, 487 P.2d 167 (Ct.App. 1971).

The dissenting opinion urges that the judgment should be reduced by a claimed overcharge of $300.35 on the "kitchen design" contract, as well as by $2,948.40 plus interest, which appellant claims represents a sum already paid to Varsa.

Varsa, in its brief and as noted in the dissent, did argue that no request for repayment of the $2,948.40 was made by Old Town in the trial court in the form of a counterclaim. But the straightforward answer to the allegation of overpayment is simply that it was not requested and it did not occur. Varsa submitted a bill to Old Town for *$42,413.10* on December 8, 1975, one of the items in that bill being a charge of $2,948.40 for additional services. The bill, Exhibit 4, clearly footnoted the fact that of the amount billed, two promissory notes for $36,910.76 and $2,553.94, respectively, had been executed "securing $39,-464.70 of the balance due, leaving $2,948.40 unsecured." The exhibit further carries a notation in Varsa's handwriting of payment of that $2,948.40 balance on December 8, 1975 by one of the limited partners. Thus, it was not included in the *$39,464.70* amount sued for under the promissory notes; and it was not included in the $10,771.63 billed and allowed as the balance due on the Lobby Expansion contract. Varsa made no claim in the trial court for, nor was there included in the amount of the judgment awarded, a sum representing double payment of that $2,948.40 item.

The $300.35 coverage was explained by Varsa as travel expense for which he was entitled to reimbursement under the terms of the architectural contract. Even though charged as a detail of "kitchen design," it was itemized as "travel" and was, in fact, an allowable contract item.

The judgment is affirmed.

IT IS SO ORDERED.

SUTIN, J., concurring in part and dissenting in part.

HERNANDEZ, J., concurs.

SUTIN, Judge (concurring in part and dissenting in part).

Plaintiff sued four individuals d/b/a Old Town Development Co. and Old Town Development Co., a limited partnership. The claim sought recovery in two of three counts on two promissory notes, one for $36,910.76, and the second for $2,553.94. The two notes were executed as follows:

Old Town Development Co.
By Freeway Old Town Limited, General Partner,
By Cyril Wolfson, President Lobo Hijo Corporation, its General Partner.

Old Town Development Company, Ltd. is a limited partnership. The limited partners are four individuals, one of whom appeared to be their representative during the construction of a hotel. He cooperated with Cyril Wolfson on behalf of Old Town in reviewing architectural services performed by plaintiff (Varsa). The general partner was Freeway Old Town, Ltd.

The general partner of Freeway was Lobo Hijo Corporation. Cyril Wolfson was president of Lobo Hijo and he managed the offices of Old Town, Freeway and Lobo Hijo.

John Peter Varsa and Wallace A. Wendell, plaintiffs, were shareholders in Lobo Hijo. Varsa was a director and officer. Cyril Wolfson was his stepfather.

On July 24, 1972, Freeway, by way of Lobo Hijo and Wolfson, entered into a standard form contract with Varsa, for the performance of architectural services in the construction of a large hotel. This contract was taken over by Old Town later. During the construction of the Hotel, a limited partner and Wolfson met constantly to review the work done by the contractor and Varsa.

At the end of construction, financial problems faced Old Town in the payment of its debts. To resolve the debts owed to Varsa, Varsa submitted two statements to Old Town for unpaid architectural services, one for $36,910.76 and the other for $2,553.94. After approving these amounts, Wolfson executed and delivered to Varsa, the Old Town promissory notes for the above respective amounts which totaled $39,464.70.

A dispute arose between Old Town and Varsa over the amounts due for architectural services. Old Town claimed that $15,935.95 was the amount due, and that the balance of $23,528.75 was not authorized in writing as provided in the contract.

Old Town challenged the following findings of fact:

8. During the construction of the hotel, additional services were requested of . . . [Varsa] by Wolfson and agreed to by . . . [Varsa].

a. for the preparation of display boards;

b. for furniture layout and interior consultation; and

c. for the preparation of information and drawings necessary for 109 items in change orders to be performed *at the rate of $25.00 per hour, which requests for additional services were not in writing.* [Emphasis added.]

\* \* \* \* \* \*

10. Wolfson was the agent for . . [Old Town] *and had the authority to enter into the agreements for additional services* and project representation for and on behalf of . . . [Old Town]. [Emphasis added.]

11. Both Wolfson and . . . [Varsa] agreed to each modification to the Hotel Contract.

\* \* \* \* \* \*

13. Subsequent to receiving the March 31, 1975 statement, Wolfson advised . . [Varsa] that Old Town Development did not presently have sufficient monies to pay the statement of March 31, 1975 [$36,910.76].

\* \* \* \* \* \*

16. Subsequent to receiving the June 9, 1975 statement, Wolfson advised . . [Varsa] that Old Town Development did not presently have sufficient money to pay the additional $2,553.94 billed on the statement of June 9, 1975.

\* \* \* \* \* \*

18. Wolfson had authority to execute the promissory notes on behalf of Old Town Development.

Among many conclusions made by the court, the following are pertinent:

6. The promissory notes were given for antecedent debts and therefore no consideration needed to be proven.

7. There was good, valuable and adequate consideration for the modifications to the Hotel Contract . . . .

Old Town makes one point on appeal: QUESTIONED ITEMS TOTALLING $23,528.75, INCLUDED IN THE TWO NOTES OF 4/14/75 FOR $36,910.76, AND THE NOTE OF 6/19/75 FOR $2,553.94, SHOULD HAVE BEEN DISALLOWED BY THE COURT.

Stated in this fashion, Old Town's point means this to me:

Old Town asserts that the two notes totalling $39,464.70 are composed of items that allegedly represent services performed by Varsa. Old Town claims that certain of those items in the amount of $23,528.75 should not be allowed and that Varsa should be limited to a recovery of $15,935.95.

·The items totalling $23,528.75 which Old Town questions are:

a. Additional Architectural Services ... $18,200.00
b. Additional Services .............. 2,948.40
c. Kitchen Design Contract .......... 300.35
d. Furniture Layout .............. 2,080.00
 Total $23,528.75

The primary contention of Old Town is that the two notes in question are not supported by antecedent debts in excess of $15,935.35. Old Town claims there was a lack of consideration for the items totalling $23,528.75 and a violation of the architectural contract because there was no written authorization for the services billed.

Article 3 of the Uniform Commercial Code relative to commercial paper is indirectly involved.

Section 55–3–408, N.M.S.A. 1978 of the Uniform Commercial Code reads:

Want or failure of consideration is a defense as against any person not having the rights of a holder in due course, ex-

cept that no consideration is necessary for an instrument . . . given in payment of or as security for an antecedent obligation of any kind. Nothing in this section shall be taken to displace any statute outside this act under which a promise is enforceable notwithstanding lack or failure of consideration. *Partial failure of consideration is a defense pro tanto whether or not the failure is in an ascertained or liquidated amount.* [Emphasis added.]

I think Old Town contends that there was a partial failure of consideration to the extent of $23,528.75. If established, this constitutes a pro tanto defense. Thus the recovery by Varsa would be precluded only to the extent of the partial failure of consideration. The burden is on Old Town to establish a partial failure of consideration. *Oklahoma Nat. Bank v. Equitable Credit Finance Co.,* 489 P.2d 1331 (Okl.1971). Partial failure of consideration only goes to reduce recovery and in legal effect concedes the consideration sufficient to sustain the note. *Parker v. McGaha,* 291 Ala. 339, 280 So.2d 769 (1973).

In determining whether the antecedent debt is sufficient consideration, the "antecedent debt" itself must be proven. An inquiry must be made into the validity of the antecedent debt to determine whether there was consideration for the debt.

The first disputed item is additional architectural services submitted by Varsa of 109 items in change orders, construction inspection services beyond the agreement and 700 hours spent by job completion at $25.00 an hour for a total of $17,500.00 and a New Mexico state tax, at 4%, of $700.00, for a total of $18,200.00.

It is Old Town's contention that these "additional architectural services are not in fact additional services as provided in the contract; that they are basic services required to be performed under the contract; and in any event, additional services as provided in the contract are at the rate of $15.00 per hour, not $25.00 per hour.

I agree with this last argument and dissent on this issue.

Section 2(b) of the contract provides:

FOR THE ARCHITECT'S ADDITION-AL SERVICES as described in Paragraph 1.3, compensation computed as follows: Principals' time at the fixed rate of FIFTEEN dollars ($15.00) per hour.

Article 12 of the Architect's Agreement reads in part:

. . . This Agreement may be amended *only* by written instrument *signed by both Owner and Architect.* [Emphasis added].

To me the word "only" means "exclusively," regardless of the circumstances, and a "written instrument signed by both Owner and Architect," is more strict than a provision prohibiting an amendment, except in writing. This agreement is a standard form provided by Architects for the protection of Architects. It was not intended to allow architects to violate the terms of the contract to seek protection. Seven hundred hours were spent on additional services. At $15.00 per hour rather than $25.00, Old Town is entitled to a credit of $7,000.00 plus interest on the total amount of the judgment.

The battle took place over the meaning of paragraph 1.3 of the contract entitled "Additional Services." It reads:

*If any of the following Additional Services are authorized by the Owner IN WRITING, they shall be paid for by the Owner as hereinbefore provided.* [Emphasis added.]

This language simply means that if Old Town permitted or allowed Varsa to render "Additional Services," Old Town would pay.

Section 1.3 is followed with 21 subsections. Section 1.3.11 included "Change Orders . . . not commensurate with the services required of the Architect." One hundred and nine "Change Orders" were submitted by Varsa in writing to the contractor, each of them signed by Varsa, Old Town and the contractor. The "Change Orders" were permitted. These were structural changes that affected substantial portions of the Hotel, not ordinary in scope and effect and unusual in expenditures. These items amounted to $17,500.00 plus a New Mexico state tax of $700.00.

The only testimony at trial was that of Varsa and the deposition of Wolfson. None of the four limited partners testified. One of the four limited partners was an attorney who represented Old Town. No architects were called by Old Town to dispute the claim for "Additional Services" for which Old Town was liable. Strenuous attempts were made by Old Town in argument with Varsa and Wolfson to color "Additional Services" with the paint of "Basic Services" required under the contract. The trial court heard the testimony and made the determination. We do not evaluate the difference between "Additional Services" and "Basic Services" in a multi-million dollar project. I affirm less reduction of $7,000.00 principal.

The second disputed item is a charge of $2,948.40 for additional services beyond the basic contract. Although disputed, this item was actually paid by one of the limited partners. Varsa claims that since Old Town did not file a counterclaim for repayment of this sum, it is inappropriate for Old Town to advance such a claim for relief at this time; that this charge was never litigated and cannot be raised for the first time on appeal. This is frivolous. Varsa must not avoid payment with alacrity, at least without a grin on his face. I dissent on this issue. The amount of $2,948.40 plus interest should be reduced from the judgment entered.

The third disputed item is one for $300.35 which is in excess of the guaranteed maximum for the kitchen design contract. I dissent on this issue.

The final disputed item is one for $2,080.00 for furniture layout and consultant charges. This is covered by Section 1.3.8 of the contract and was not authorized by Old Town in writing. I dissent on this issue.

It is my opinion that the judgment should be reduced in the sum of $12,328.75.