889 P.2d 171

Alfonso D. MEDINA and Arlene D. Medina, his wife, Plaintiffs–Appellees,

v.

SUNSTATE REALTY, INC., Defendant–Appellant.

No. 22111.

Supreme Court of New Mexico.

Jan. 11, 1995.

Martin, Lutz & Brower, P.C., William L. Lutz, Las Cruces, for appellant.

Bates Law Firm, Lloyd O. Bates, Jr., Las Cruces, for appellees.

## OPINION

RANSOM, Justice.

Alfonso and Arlene Medina, husband and wife, sued Sunstate Realty, Inc., for breach of contract and specific performance, among other claims, in connection with a residential construction contract. Sunstate counterclaimed against the Medinas for breach of contract and to foreclose materialmen's and mechanics' liens that it held on the home it had built for the Medinas. After the trial court entered an interlocutory order finding that the building agreement between the Medinas and Sunstate was a fixed-price con-

tract, it held a bench trial on all claims and awarded specific performance and attorney's fees to the Medinas. The court dismissed Sunstate's counterclaims. Sunstate appeals. Because we find as a matter of law that the building agreement between the Medinas and Sunstate was unambiguously a cost-plus contract with a fixed contractor's fee, we reverse the trial court and remand for a determination of the reasonable construction costs incurred by and to be awarded to Sunstate. Further, because we find that the contract could have been modified by express or implied agreement, we remand for a determination whether the contract actually was modified.

*Facts and proceedings.* In early 1992 the Medinas decided to have a home built on land they had purchased in Las Cruces, New Mexico. They secured bids from various contractors, one of whom was Sunstate. In its proposal Sunstate offered to "build the home on a cost plus basis of eight one half percent (8.5%)." The Medinas accepted Sunstate's proposal and the parties entered into a formal contract on September 2, 1992.

The contract required the Medinas to pay Sunstate approximately $108,000, in exchange for which Sunstate agreed to build a home for the Medinas in accordance with certain plans and specifications. Paragraph sixteen of the contract provides in part: "This is a Cost Plus contract. The Contractor will be paid 8 and ½ percent of the total cost to construct the home." Although the contract expressly allows modification of the original plans and specifications, it requires such modifications to be in writing. During construction, the parties modified the contract by executing three written change orders. The third change order, executed shortly before Sunstate completed construction, provides in part that "Contractor has agreed to base the cost plus fee of 8½% only on the original approximate price of $108,-000—which is equal to $9,180.00."

As the time for closing drew near, the Medinas and Sunstate began to dispute the amount due under the contract. Sunstate contended that the contract was a cost-plus contract with a fixed contractor's fee and that the Medinas were obligated to pay all con-

struction costs in excess of the initial $108,-000 contract sum. Sunstate also contended that the Medinas had orally agreed to several modifications, some of which were partially paid for by the Medinas and some of which were not paid for at all. The Medinas contended that the contract was a fixed-price contract calling for payment of $108,000 for construction costs and $9,180 for the contractor's fee. The Medinas agreed that some modifications to the original agreement had been made but insisted that those modifications had been paid for.

Based on their understanding of the contract, the Medinas estimated that they owed Sunstate $120,724. After subtracting payments totaling $94,094 from this estimate, the Medinas tendered $26,630 to Sunstate. Believing that payment in full had not been tendered, Sunstate rejected the Medinas' tender and refused to close. This suit followed.

At a preliminary hearing the trial court entered an order determining that the building agreement between the Medinas and Sunstate was a fixed-price contract calling for payment of $108,000 in construction costs and $9,180 in contractor's fees. The trial court prohibited Sunstate from showing that the costs of constructing a home for the Medinas had increased because of increases in material and labor costs. Although at trial Sunstate was allowed to make offers of proof reflecting alleged oral modifications and offers of proof reflecting that actual costs had exceeded contract allowances, the court ruled that Sunstate would be allowed to show only amounts due on the original written contract, amounts due because of written change orders, and amounts voluntarily paid by the Medinas.

■ *The building agreement between the Medinas and Sunstate is a cost-plus contract with a fixed contractor's fee.* Sunstate argues that the building agreement between itself and the Medinas is a cost-plus contract with a fixed contractor's fee and that Sunstate thus should be entitled to recover the actual reasonable costs of construction. The Medinas counter that the trial court correctly concluded that the contract is a fixed-price contract and hence excluded evidence that

labor and material costs had exceeded the initial contract sum of $108,000.

When interpreting a contract, we give force and effect to the intent of the parties. *Shaeffer v. Kelton,* 95 N.M. 182, 185, 619 P.2d 1226, 1229 (1980). In determining the intent of the parties we must consider the entire contract and not just selected portions. *Id.* When the parties' expressions of mutual assent are clear and unambiguous, we must give effect to those expressions.

Whether the parties' expressions of mutual assent are clear and unambiguous is a question of law. *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). In determining whether an agreement is clear and unambiguous, we may consider "evidence of the circumstances surrounding the execution of the agreement." *Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). If this evidence is so plain that reasonable minds could not differ, we may interpret the agreement as a matter of law. *Id.*

Prior to entering this agreement, Sunstate provided the Medinas with a proposal in which it offered to "build the home on a *cost plus basis* of eight one half percent (8.5%)." The Medinas accepted this proposal without modification. This pre-contract proposal is consistent with paragraph sixteen of the building agreement. That paragraph provides that "this is a *Cost Plus* contract" and "[t]he Contractor will be paid 8 and ½ Percent of the total cost to construct the home." Finally, the third written change order, which modified the original agreement and became part of it, provides that "Contractor has agreed to base the cost-plus fee of 8½% only on the original approximate price of $108,000." The meaning of this building agreement is clear and unambiguous as a matter of law. The plain meaning of paragraph sixteen and of the third written change order was that Sunstate would build a house for the Medinas and the Medinas would pay the actual labor and material costs. The parties' pre-contract negotiations are consistent with this plain meaning and do not establish an ambiguity.

The original building agreement was a cost-plus contract. The third written change order did not make the agreement a fixed-price contract; it simply fixed the contractor's fee. Hence we reverse the trial court and remand for a determination of the actual and reasonable construction costs. Whether the construction costs are reasonable depends on the circumstances existing within the construction industry while the Medinas' house was being built. It does not depend on the original estimated price of $108,000. There is no claim of misrepresentation in the original estimate. In a cost-plus contract the owner and not the builder enjoys the advantage or suffers the risk of costs that are lower or higher than estimated. *Allen Co. v. Thoroughbred Motor Court, Inc.,* 272 S.W.2d 343, 345 (Ky.1954) (noting that "the owner assumes certain risks under a cost-plus contract, such as increases in prices of materials and wages").

*The contract could be modified by express or implied agreement of the parties as shown by their words and conduct.* At trial Sunstate sought to introduce evidence that the written contract between itself and the Medinas, as well as the original plans and specifications, had been modified orally. The trial court excluded all evidence of oral modification except insofar as the Medinas had tendered payment to Sunstate for work and material costs not specified in either the original building agreement or written change orders. Sunstate contends that a written contract may be orally modified by agreement of the parties even when the contract itself specifies that all modifications must be in writing. Thus Sunstate argues that it was error for the trial court to exclude evidence that the building agreement had been orally modified.

In *Wendell v. Foley,* 92 N.M. 702, 705, 594 P.2d 750, 753 (Ct.App.), *cert. denied,* 92 N.M. 675, 593 P.2d 1078 (1979), the Court of Appeals noted that "in the absence of a prohibiting statute, a written contract may be orally modified by the parties who made the original agreement." The Court also noted that oral modifications may be made even though the contract itself requires all modifications to be in writing. *Id.* Thus the Court held

that oral agreements by the parties calling for additional architectural services to be performed were enforceable modifications to a written contract, even though the contract itself specified that all modifications had to be in writing. *Id.*, 92 N.M. at 703–05, 594 P.2d 750.

In *Driver–Miller Plumbing, Inc. v. Fromm*, 72 N.M. 117, 118–19, 381 P.2d 53, 54 (1963), this Court, while not directly addressing the oral-modification issue raised in *Wendell*, upheld the oral modification of a written contract to install a heating system. *See also Mercury Gas & Oil Corp. v. Rincon Oil & Gas Corp.*, 79 N.M. 537, 539, 445 P.2d 958, 960 (1968) ("[P]arol modification relied on by one of the parties may give rise to estoppel."); *Tyner v. DiPaolo*, 76 N.M. 483, 485–86, 416 P.2d 150, 152 (1966) (upholding finding that there was insufficient evidence of oral modification). Thus New Mexico adheres to the general rule set forth in Professor Williston's treatise on contracts that "a written contract may be modified, rescinded or discharged by subsequent oral agreement." 4 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts*, § 591, at 203 (3d ed. 1961) (quoting *Nickel v. Scott*, 59 A.2d 206, 207 (D.C.1948); *see also* Restatement (Second) of Contracts § 150 (1979) (stating that oral modification to written agreement may be enforced despite the Statute of Frauds if one party changes position in reliance on oral agreement). The parties to a written contract may modify that contract by express or implied agreement as shown by their words and conduct. *Atokad Agricultural and Racing Association v. Governors of the Knights of Ak-Sar-Ben*, 237 Neb. 317, 466 N.W.2d 73, 78 (1991) (" '[I]t is not essential that the mutual assent of the parties to modify the contract be express[;] ... it may be implied from acts and circumstances[,] ... from a course of conduct[,] ... and from acts of one party in accordance with the terms of a change proposed by the other.' " (quoting 17A C.J.S. *Contracts* § 375, at 427 (1963) (citation omitted)))

Even if the trial court had been correct when it ruled that the building agreement between the Medinas and Sunstate was a fixed-price contract, it was an abuse of discretion to exclude evidence that the building agreement had been orally modified. In order for the Medinas to be entitled to specific performance of the building agreement, they had to prove that they had fully performed their obligations under the contract, including the obligation to make full payment. *See Hopper v. Reynolds*, 81 N.M. 255, 260, 466 P.2d 101, 106 (1970). Sunstate contended that the original plans and specifications had been orally modified and that the Medinas had not paid for labor and materials used in building their home in accordance with the modified plans and specifications. By excluding all evidence of oral modification, the trial court severely prejudiced Sunstate in its ability to show that the Medinas were not entitled to specific performance and, in fact, owed Sunstate money for services performed under the contract as modified.

*Conclusion.* The plain meaning of the building agreement between the Medinas and Sunstate demonstrates that the parties entered a cost-plus contract with a fixed contractor's fee. Further, the trial court erroneously restricted the evidence of the amount due Sunstate to payments required under the written contract and written change orders, and it never determined whether the contract had in fact been modified by the express or implied agreement of the parties. We thus reverse the trial court and remand for a determination of the reasonable construction costs to be awarded to Sunstate and for a determination whether the Medinas and Sunstate, by their words and conduct, expressly or impliedly agreed to modify the terms of their building agreement.

**IT IS SO ORDERED.**

FRANCHINI, J., and PATRICIO M. SERNA, District Judge, concur.