IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-071

Filing Date: April 3, 2014

Docket No. 32,017

LUZ CORONA,

      Plaintiff-Appellee,

v.

DANIEL CORONA and MARIA CORONA,
husband and wife, SAMUEL CORONA and
MARCIANA CORONA, husband and wife,
and JOSE LUIS CORONA and MARTA
CORONA, husband and wife,

      Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Jacinto Palomino, District Judge

Lilley & O'Connell, P.A.
Michael W. Lilley
Jerome O'Connell
E'rin O'Connell
Las Cruces, NM

for Appellee

Cervantes Law Firm, P.C.
Joseph Cervantes
Las Cruces, NM

L. Helen Bennett
Albuquerque, NM

for Appellants

OPINION

1

**BUSTAMANTE, Judge.**

**{1}** This case involves an effort by a sister to collect a substantial sum of money from her brothers for obligations incurred almost fifteen years ago. Appellee, Luz Corona, allowed the statute of limitations to run on each of these debts. We consider whether payments made well after the expiration of the statute of limitations revived the debts. We conclude that the district court's findings that the payments sufficed to revive all the loans and guaranties are supported as to some of the appellants but not as to others. We therefore reverse in part and affirm in part the district court's determination of revival.

**{2}** Appellants also make a number of arguments to the effect that, even if the debts and guaranties are enforceable, their liability is limited because the business entity that borrowed the funds is no longer extant or because one brother arranged the loans independently of the others, and the amount owed is limited by the terms of one or more agreements. We affirm the district court as to these arguments.

**FACTUAL BACKGROUND**

**{3}** In September 1999 Daniel Corona, Jose Luis Corona, and Samuel Corona (the Brothers) together with their wives, Maria Corona, Marciana Corona, and Marta Corona (the Wives) (collectively, Appellants) entered into an arrangement through which Luz provided a "revolving line of credit" to Coronas Concrete Company, Inc. (Coronas Concrete Company), a construction company owned by the Brothers. Luz is the Brothers' sister. The parties executed a promissory note, loan agreement, and security agreement (collectively, the Agreement) to memorialize the arrangement. All of the documents referred to "Coronas Concrete Company, Inc." as the borrower. The promissory note and loan agreement were signed by Appellants as individual guarantors. Both of these documents specified that the balance of principal and interest owed was to be paid in full by September 30, 2000. Both also provided that the prevailing party would be entitled to reasonable attorney fees and costs in the event of a dispute. Finally, both the promissory note and loan agreement stated that "Coronas Concrete Company, Inc." could borrow up to seventy thousand dollars and that interest would be charged at a rate of eight percent. The parties agree that, in spite of this language, Appellants requested and Luz agreed to lend monies totaling well over that limit, although they dispute the total amounts lent and paid.

**{4}** Around the same time, Luz provided approximately $70,000 as a down payment for the purchase of land that was eventually titled in the name of "Coronas Concrete Company, Inc." The parties did not memorialize the terms of this loan in writing. The parties appear to agree that the loan principal was to be repaid within a year and that interest would accrue at eight percent if the principal was not paid within that time. We refer to this arrangement as the "Land Loan."

**{5}** A year later, a $42,000 certificate of deposit owned by Luz was used to cover an unpaid line of credit owed by Coronas Concrete Company. Like the Land Loan, the parties

failed to document the terms of this arrangement in writing. We refer to this arrangement as the "CD Loan."

**{6}** Coronas Concrete Company borrowed from and repaid Luz in various transactions between 1999 and late 2000. Between September 2000 and November 2008, there were no payments made to Luz by Coronas Concrete Company, its successor companies, or Appellants. In November 2008 Luz received a check for $20,000 issued by Las Cruces Concrete Construction, LLC, one of the successor companies to Coronas Concrete Company owned by the Brothers. Since this payment is at the crux of the district court's findings, we will refer to it as "the $20,000 payment." Between November 2008 and February 2010 Luz received payments totaling $63,000, including the $20,000 payment. Each of the checks issued to Luz beginning in November 2008 was drawn on an account held by Las Cruces Concrete Construction, LLC, and all the checks after the $20,000 payment indicated that the check was a "payment on loan." Although the checks were issued by Las Cruces Concrete Construction, LLC, the funds were treated as draws against the profits allocated after taxes to Daniel, Jose Luis, and Samuel Corona.

**{7}** The district court found that in 2009 the parties entered into an oral settlement agreement in which Luz accepted Appellants' offer of $100,000 to be paid in monthly installments of $5,000. This agreement was never memorialized in writing and there was no discussion between the parties as to whether the settlement applied to the Agreement, the Land Loan, the CD Loan, or all three arrangements. Appellants breached the terms of the settlement agreement when they failed to pay $5,000 per month as agreed.

**PROCEDURAL BACKGROUND**

**{8}** Luz filed suit in 2010 alleging breach of contract, breach of good faith and fair dealing, and breach of promissory note. Appellants filed a motion for summary judgment, arguing that Luz's claims were barred by the statutes of limitations and, therefore, the terms of the Agreement, Land Loan, and CD Loan were unenforceable. *See* NMSA 1978, § 37-1-3(A) (1975) (limitations period for written contracts is six years); NMSA 1978, § 37-1-4 (1880) (limitations period for unwritten contracts is four years). Luz filed a cross-motion for partial summary judgment, arguing that all of the debts were revived pursuant to NMSA 1978, Section 37-1-16 (1957). The district court agreed with Luz and ruled that the statutes of limitations did not bar her claims because "[Appellants'] tender of partial payments . . . and [their] admissions of liability and willingness to repay [Luz] following the expiration of the applicable statute of limitations, [revived Luz's claims]." Based on this ruling, the district court granted partial summary judgment to Luz and ordered that "because [Appellants'] debt and liability to [Luz] were revived as a matter of law, the sole issue for trial is the amount and extent of [Luz's] damages."

**{9}** The matter proceeded to a bench trial. In spite of the district court's ruling on summary judgment, the district court heard evidence on and permitted the parties to litigate the issue of whether the loans were revived. At the conclusion of the trial, the district court

made the following findings of fact pertinent to this appeal.

5. The Promissory Note states Defendants specifically waive a right to demand of non-payment in the event the note is not paid at maturity.

6. The Promissory Note states that any delay or omission in the enforcement of the Promissory Note does not affect the liability of Defendants.

. . . .

10. Defendants Samuel Corona, Jose Luis Corona, Maria Corona, Marta Corona, and Marciana Corona authorized Defendant Daniel Corona to act as their agent with respect to the loan agreement with Luz Corona.

11. Daniel Corona acted as the authorized agent of Defendants Samuel Corona, Jose Luis Corona, Maria Corona, Marta Corona, and Marciana Corona with respect to Luz Corona's loans and the amounts repaid to Luz Corona.

. . . .

26. Luz Corona's Certificate of Deposit in the amount of $42,000.00 that was used to pay Defendants' Line of Credit was a loan from Luz Corona to Defendants subject to the terms of the Promissory Note.

. . . .

29. The November 2008 payment predates the Settlement Agreement and the parties did not agree as to which debt the payment was to be applied.

30. The $63,000 that was repaid was not directed to any specific loan owed.

31. In 2009, Plaintiff and Defendants entered into a verbal executory accord (a/k/a "settlement agreement") for the resolution of all monies owed to her by Defendants.

. . . .

33. Defendants defaulted on the settlement agreement by failing to timely tender the $5,000.00 monthly payment.

4

34. Under New Mexico law[,] Luz Corona, as the non-breaching party, had the ability to elect between either enforcing the executor[y] accord or enforce the terms of the original loan agreement.

35. Luz Corona elected to enforce the original loan agreement and seek repayment of the entire outstanding loan balance, interest and attorney[] fees owed by Defendants.

. . . .

40. The monies paid to Luz Corona from Daniel Corona, Jose Luis Corona, and Samuel Corona's subsequent business entities to Luz Corona were in fact payments from Daniel Corona, Samuel Corona, and Jose Luis Corona, individually, in equal shares.

. . . .

42. Defendants admit they currently owe Luz Corona an undetermined amount of money.

{10} Based on these findings, the district court entered the following conclusions of law:

4. Defendants tendered partial payments to Luz Corona on the unpaid balance of her loan between November 2008 and February 2010, and which constituted a revival of their contract with Luz Corona under New Mexico law. In addition, Defendants admitted liability to Plaintiff in depositions, and which also served to revive the loan via a signed writing by signing the checks for partial payments, and which denoted in writing "Payment on Loan[.]" See NMSA 1978, Section 37-1-16.

5. Defendants' 2008 payment to Luz Corona revived all of the debts owned by Coronas Concrete Company and Daniel Corona, Samuel Corona, and Jose Luis Corona as guarantors; and, therefore, the statute of limitations has not run on the enforcement of all funds owed by Defendants' to Luz Corona.

6. The $20,000.00 payment in 2008 was a loan payment that applied to all the outstanding debts (promissory note, certificate of deposit, and land loan) owed by Defendants to Luz Corona in pro rata shares.

. . . .

21. Luz Corona is owed $244,121.53 in unpaid princip[al] and interest.

5

22. Defendants are liable to Luz Corona for her reasonable attorney[]
fees and costs, in an amount to be determined by the [c]ourt.

In separate proceedings, Appellants were ordered to pay $98,217.46 in attorney fees.

## DISCUSSION

**{11}** The parties do not dispute that Luz brought her claims after the statute of limitations had run on the Agreement, the Land Loan, and the CD Loan. Rather, the issues on appeal pertain to three questions, broadly stated: (1) which, if any, of the debts were revived; (2) who is liable for which debt; and (3) the amount of liability.

## Standard of Review

**{12}** In general, "[w]e review de novo whether a particular statute of limitations applies." *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 8, 132 N.M. 459, 50 P.3d 554. Here, however, the threshold question is not whether the statute of limitations apply on their terms. The parties agree that they do. Instead, the question is whether the statute of limitations clock began running anew due to revival. Were the facts undisputed, our review of the district court's conclusions of law would be de novo. *See Joslin v. Gregory*, 2003-NMCA-133, ¶ 6, 134 N.M. 527, 80 P.3d 464 (stating that where the facts are undisputed, this Court reviews whether partial payment revives the statute of limitation "as a pure question of law"). Here, the facts were disputed at trial and the district court's decision depended on its examination of Appellants' conduct and their intent. Thus, we review whether Appellants' conduct was sufficient to revive the debts as a factual question. *See Citizens Bank of Clovis v. Teel*, 1987-NMSC-087, ¶ 8, 106 N.M. 290, 742 P.2d 502 ("It has long been recognized that, when the words of acknowledgment or promise do not expressly refer to the debt sought to be recovered, whether they are to be deemed as referring to such debt is usually a question of fact."); *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 20, 126 N.M. 196, 967 P.2d 1136 (stating that where "the [district] court's decision must be based on its conclusions about a party's conduct and intent," the appellate court reviews "whether the court's findings and decision are supported by substantial evidence"). Similarly, the questions of who is liable and the amount of liability are also fact-dependent inquiries. *See Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 6, 111 N.M. 410, 806 P.2d 59 (examining whether the evidence was sufficient to support the district court's factual findings where the appellant challenged those findings and stating that "[i]t has been firmly established in this jurisdiction that only the trier of facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies").

**{13}** We therefore review the record to determine whether the district court's factual findings are supported by substantial evidence. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omitted). Under this standard of review, "we review the

6

evidence in the light most favorable to upholding the finding and indulge all reasonable inferences in support of the [district] court's decision." *Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶ 20, 135 N.M. 641, 92 P.3d 653. We review the district court's application of the law to those facts de novo. *See Ponder*, 2000-NMSC-033, ¶ 7.

**Revival of the Loans**

**{14}** We begin with the question of whether each of the loans and the guaranties signed by Appellants were revived, making the loans and guaranties enforceable. New Mexico's revival statute provides that

> [c]auses of action founded upon contract shall be revived by the making of any partial or insta[l]lment payment thereon or by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith.

Section 37-1-16. Partial payment of a debt "will renew a barred debt when such payment is made under circumstances that warrant a clear inference that the debtor acknowledges and is willing to pay a further indebtedness." *Joslin*, 2003-NMCA-133, ¶ 14 (quoting II Calvin W. Corman, *Limitation of Actions* § 9.12.3, at 93 (1991)).

**{15}** The district court found that the $20,000 payment "revived all of the debts ow[]ed by Coronas Concrete Company and [Appellants] as guarantors" and that "[t]he $20,000 payment in 2008 was a loan payment that applied to all the outstanding debts." Appellants argue that there was insufficient evidence that they intended to restart the limitations period as to any loan and that, because the $20,000 payment did not reference any particular loan, it was insufficient to restart the clock as to all of the loans. We conclude to the contrary that the evidence was sufficient to support the district court's findings.

**{16}** At trial, Luz demonstrated that (1) the $20,000 payment followed contentious discussions between Daniel Corona and Luz over how much was owed to Luz; (2) the payment was divided equally between the Brothers individually; (3) the Appellants admit that they owe Luz money but dispute the amount owed; and (4) after the $20,000 payment, Appellants made seventeen more payments to Luz, which were divided between the Brothers and notated "payment on loan."

**{17}** Appellants rely on the general proposition that where there are multiple debts, a payment that does not specify that it applies to those debts cannot revive all of the debts. *See* 4 Williston on Contracts, § 8:31, at 582 (4th ed. 2004) ("If the creditor can only establish the making of a payment, and the further fact that a larger sum was due the creditor, there is generally no sufficient evidence to submit to the jury in an action by the creditor for the remainder of the claim."). Here, however, Luz provided evidence not only of the payment and a larger debt, but also of the circumstances surrounding the payment. Viewed in the

light most favorable to the judgment, the evidence was sufficient to permit the district court to conclude that the $20,000 payment was a payment on all of the debts owed by Appellants to Luz and, therefore, revived the statute of limitations applicable to those debts.

**Revival of the Guaranties**

**{18}**     Resolution of the question of revival as to the loans does not address whether the guaranties associated with the loans are also revived.  This question has not yet been addressed in New Mexico.  Appellants point to a New Jersey case stating that although part payment by the maker of the contract might suffice to restart the limitations period as to the maker, such payment "did not inure of itself to create liability in the guarantor."  *Marinelli v. Lombardi*, 196 A. 701, 703 (N.J. 1938).  We agree that this is the general rule.  *See* E.W.H., Annotation, *Acknowledgment, New Promise, or Payment by Principal as Tolling Statute of Limitations as Against Guarantor*, 84 A.L.R. 729 (1933) ("In most of the jurisdictions in which the point has arisen, it has been held that a payment by a principal debtor will not operate to toll the [s]tatute of [l]imitations as to a guarantor of the debt[.]"); *accord* 4 Williston, *supra* § 8:42, at 680; 54 C.J.S. *Limitations of Actions* § 374 (2013).

**{19}**     But the weight of authority also indicates that where the acknowledgment, promise, or part payment by the primary debtor is ratified by co-debtors or guarantors, the statute of limitations will be revived as to them as well.  *See PNL Asset Mgmt. Co. v. Brendgen & Taylor P'ship*, 970 P.2d 958, 964 (Ariz. Ct. App. 1998) (holding that the statute of limitations as to the guarantors was revived where the guarantors knew of and consented to partial payments and stating, "Where one joint obligor knows of and consents to an acknowledgment by the other or ratifies it, the statute is restarted as to both."); *Watkins Prods., Inc. v. Rains*, 120 N.W.2d 368, 371 (Neb. 1963) (stating that payment by the principal debtor "operate[s] only to toll the statute of limitations as to the principal debtor who made the payment, but not as to a surety who did not voluntarily pay, authorize, or ratify it"); 4 Williston, *supra* § 8:42, at 680 ("It is generally held that a new promise or part payment by a principal debtor or obligor after the debt is barred will not renew the liability of the surety unless the principal obligor and surety were joint obligors or the surety has agreed to the new promise or part payment."); 54 C.J.S. *Limitations of Actions* § 374 (stating that "a promise or acknowledgment by a principal debtor will not affect the running of the statute of limitations as to his or her guarantor, absent some clear indication that the debtor was acting as an agent of the guarantor" and that an acknowledgment or promise by a joint debtor cannot bind another debtor unless the first debtor's "act can be shown to have been ratified") (footnote omitted); 51 Am. Jur. 2d *Limitation of Actions* § 311 (2011) ("However, if one joint obligor knows of and consents to an acknowledgment by the other or ratifies it, the limitations period is restarted with respect to both of them.").

**{20}**     The more nuanced approach set out in these authorities does not conflict with the categorical rule relied on by Appellants.  The general rule against revival of the statute with respect to guaranties is based in the principle that "[a] guarantor's consent to the debtor's future conduct may not be presumed merely on the basis of the original guarantee."  *United*

8

*States v. Rollinson*, 866 F.2d 1463, 1469 (D.C. Cir. 1989). This reasoning is obviously irrelevant in cases where the guarantor in fact consents to or ratifies the debtor's conduct. *See PNL Asset Mgmt. Co.*, 970 P.2d at 964 (citing *Rollinson* and stating, "Here we need not look to the original guaranty for the consent. . . . The . . . guarantors necessarily knew and consented to the partial payments and written acknowledgments made by [the debtor]."); *cf. Rollinson*, 866 F.2d at 1468-69 (discussing the rationale behind the rule and instances in which a guarantor might agree to assume responsibility for a debtor's future undertakings).

**{21}** The ratification rule is also consistent with this Court's holding in *Joslin,* in which the Court considered whether payments made by the assignee of a note constituted partial payment on a debt sufficient to revive the debt and permit an action against the assignor. 2003-NMCA-133, ¶¶ 4, 5. Relying on the principle that "a partial payment must be voluntary in order to revive a debt[,]" the Court held that "the payments . . . cannot remove the statutory bar to [the assignee's] claim" because "once the initial assignment . . . was in place, the payments made . . . by the notes' payors could not be deemed 'voluntary' payments by [the assignor]" because the assignor had no control over the payments. *Id.* ¶¶ 15, 17. Applying this reasoning to guarantors, we conclude that a payment by a principal obligor, without consent or ratification by the guarantor, is not a voluntary act by the guarantor and, hence, cannot bind the guarantor. If the guarantor consents to or ratifies the payment, however, then the guarantor is deemed to have joined in the payment, which is sufficient to revive the debt as to the guarantor.

**{22}** We now apply these concepts to the facts here. The district court found that Daniel acted as the Brothers' agent in all financial matters. "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." *Madsen v. Scott*, 1999-NMSC-042, ¶ 8, 128 N.M. 255, 992 P.2d 268 (quoting UJI 13-401 NMRA). "[A] plaintiff bears the burden of showing that there was an agency relationship." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 43, 150 N.M. 64, 257 P.3d 884.

**{23}** Here, Jose Luis and Samuel testified that Daniel acted as the agent of Coronas Concrete Company in financial matters with their approval. They also testified that they knew about and approved the settlement agreement negotiated by Daniel. Jose Luis also testified that he knew about and approved the $20,000 payment. Samuel testified that Daniel "had the authority to make arrangements" with Luz and that Daniel was "authorized" to make payments, divided equally between the Brothers, to Luz. Daniel Corona also testified that he "represent[ed his] brothers in financial dealings with Luz." He stated, "In all of the financial matters, I represented all of my brothers in all of the financial matters, in order to save time" and that "in all of the transactions, . . . I was the representative of the companies and also of my brothers." This evidence is sufficient to permit the district court's finding that Daniel was his brothers' agent in all pertinent dealings with Luz.

**{24}** The $20,000 payment was initiated by Daniel Corona, a guarantor. Thus, the statute

9

of limitations was revived as to him and his guaranty is enforceable. In addition, although Daniel Corona signed the $20,000 payment, the evidence supports the district court's finding that Samuel and Jose Luis approved of it, as discussed above. Thus, Jose Luis' and Samuel's personal guaranties are also enforceable because they consented to or ratified the $20,000 payment and because Daniel was acting as their agent.

**{25}** The situation is different with regard to the Wives. By stipulation of the parties, the Wives did not appear at the hearing. There was no testimony or other evidence presented indicating that they knew about or approved of the $20,000 payment or subsequent payments. Nor was there evidence that they knew about or ratified the settlement agreement. Given that "[t]he guarantor is a favorite of the law and is entitled to have the guaranty strictly construed in . . . her favor[,]" we conclude that the evidence was insufficient that the Wives ratified the part payment. *Sunwest Bank of Clovis, N.A. v. Garrett*, 1992-NMSC-002, ¶ 19, 113 N.M. 112, 823 P.2d 912. Thus, the statutes of limitations were not revived as to the Wives' guaranties and those guaranties are no longer enforceable.

**{26}** Our conclusion on the enforceability of the guaranties raises a related question: to which loans do the guaranties apply? The district court found that the CD Loan was "subject to the terms of the [p]romissory [n]ote." Appellants argue that this finding was in error because "[t]he evidence was unequivocal that th[is] loan[] w[as] separate and apart from the revolving line of credit that was the subject of the written contracts." But they do not direct us to any evidence, much less unequivocal evidence. The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred. *See In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 ("This court will not search the record to find evidence to support an appellant's claims."). We decline to examine Appellants' contention regarding the CD Loan any further.

**{27}** The parties agree that the Land Loan is not subject to the terms of the Agreement. In addition, although the district court made a finding that the CD Loan was subject to the terms of the Agreement, there is no similar finding with respect to the Land Loan. We infer that the district court found that the Land Loan was *not* subject to those terms. Thus, neither the guaranties nor the attorney fee provisions of the Agreement apply to the Land Loan. Consequently, we reverse the award of attorney fees to the extent it was based on the enforcement of the Land Loan and the terms of the Agreement. *See Paz v. Tijerina*, 2007-NMCA-109, ¶ 9, 142 N.M. 391, 165 P.3d 1167 ("In determining whether an attorney fee award is appropriate, New Mexico follows the American rule which states that, in the absence of statute, court rule, or contractual agreement, the prevailing party will not normally receive attorney fees.").

**{28}** Finally, we decline to examine Appellants' undeveloped argument that the security agreement is not enforceable. This Court has no duty to review an argument that is not adequately developed. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several

factual assertions that were made without citation to the record).

**Liability Unaffected by Identity of Borrowers**

**{29}**     Having determined that all of the loans were revived and that the Brothers', but not the Wives', personal guaranties of the Agreement and CD Loan are enforceable, we next address Appellants' arguments that liability should be limited because (1) Coronas Concrete Company was the borrower, or (2) Daniel Corona acted alone in negotiating and managing the loans with Luz. Appellants first argue that the district court erred in finding them individually liable for breach of the loan terms. As regards the loans subject to the Agreement, although Coronas Concrete Company was the borrower and, therefore, primary obligor, Appellants assumed liability as secondary obligors when they individually guaranteed the loan. Since Coronas Concrete Company did not repay the monies subject to the guaranties, Luz had the option to pursue recovery from the guarantors under the terms of the promissory note and loan agreement. Thus, since Luz's claims are against the Brothers as guarantors, not against Coronas Concrete Company, this argument is unavailing.

**{30}**     As regards the Land Loan, Appellants' liability is based on whether Coronas Concrete Company or Appellants borrowed those monies. The district court found that the loan was to Appellants individually, not to Coronas Concrete Company. Luz testified that the loan was to the Brothers, not Coronas Concrete Company. Jose Luis Corona testified that the owners of the property were "[m]y brothers Daniel, Samuel, and me" but also implied that they were owners of the land by virtue of their ownership of Coronas Concrete Company. Daniel Corona testified that Luz provided the funds "[f]or the purpose of having a partnership on that land" with him, Samuel, and Jose Luis Corona. The fact that Daniel described the "partnership" as between Luz and the Brothers indicates that he understood the transaction to involve the Brothers as individuals rather than Coronas Concrete Company. This testimony supports a finding that Luz loaned the Brothers money to purchase the land.

**{31}**     It does not, however, support a finding that the Wives were also borrowers of these funds. We conclude that the district court erred in finding that the Wives were borrowers with regard to the Land Loan and holding them liable for repayment of the Land Loan.

**{32}**     Appellants also argue that, because Daniel Corona acted alone and not as their agent, the other Appellants cannot be held liable for any outstanding loans. The district court found to the contrary that "[Appellants] Samuel Corona, Jose Luis Corona, Maria Corona, Marta Corona, and Marciana Corona authorized [Appellant] Daniel Corona to act as their agent with respect to the [A]greement with Luz" and that "Daniel Corona acted as the authorized agent of [Appellants] Samuel Corona, Jose Luis Corona, Maria Corona, Marta Corona, and Marciana Corona with respect to [Luz's] loans and the amounts repaid to Luz." We have already determined in the revival discussion above that there is substantial evidence supporting the district court's finding that Daniel Corona acted at all times as the Brothers' agent with regard to all financial matters involving Luz. That discussion fully answers this

contention by them.

**{33}** As we have noted, however, there was no testimony by or about the Wives with regard to this issue. Although Luz bore the burden of proof at trial, she does not direct us to any evidence supporting a finding of agency on behalf of the Wives. In fact, the limited testimony on the matter is contrary to the district court's finding that Daniel acted as an agent for the Wives in managing the loans. Daniel testified that "[the W]ives were always kept out of all of [the financial matters]." Samuel testified that his wife, Marciana, never "authorized Daniel Corona to incur or undertake any debt for [Samuel or her] personally[.]" Jose Luis's testimony was to similar effect.

**{34}** In summary, as pertains to the Agreement, the evidence supports the district court's finding that the Brothers are liable as guarantors of the monies lent to Coronas Concrete Company. As to the Land Loan, the district court's finding that the loan was made to the Brothers is also supported by substantial evidence. The district court erred, however, in finding that the Wives were borrowers under that loan. Since they were not, they cannot be liable for the Land Loan. Finally, we conclude that the evidence supports the district court's finding that Daniel Corona acted as his brothers' agent in negotiating the loans and settlement agreement, and in making the payment that revived the loans, but that it does not support a finding that he acted as an agent for the Wives.

**Amount of Liability**

**{35}** We turn finally to the question of the extent of the Brothers' liability. Appellants make two arguments. First, they maintain that, as guarantors, they cannot be held liable for modifications to the Agreement and, therefore, their liability must be limited to the amount originally contemplated in the Agreement—$70,000. Second and alternatively, they contend that their liability is limited to the amount of the settlement agreement—$100,000. We address these arguments in turn.

**{36}** Because the promissory note and loan agreement made repeated references to a $70,000 cap on the amount to be borrowed, Appellants contend that any liability under the guaranties must be limited to that amount. In spite of this language, Coronas Concrete Company borrowed more than that amount. Appellants argue that, by loaning the business more than the amount stated in the Agreement, Luz "material[ly] altere[d] . . . the terms of the [p]romissory [n]ote and [l]oan [a]greement" and that the modification "vitiated the personal guarant[i]es of the [Appellants] as a matter of law." They maintain that the modification either "nullified" the guaranties altogether or, if the guaranties remain intact, had no effect on the limit of liability under them such that Appellants' liability is limited to $70,000. Luz agrees that the Agreement was materially modified but maintains that substantial evidence supports the district court's implicit finding that the parties agreed to the oral modification of the Agreement and, therefore, it should be enforced. *See Medina v. Sunstate Realty, Inc.*, 1995-NMSC-002, ¶ 14, 119 N.M. 136, 889 P.2d 171 (stating that "New Mexico adheres to the general rule . . . that a written contract may be modified . . . by

subsequent oral agreement" (internal quotation marks and citation omitted)).

**{37}** "As a general rule, a change in the underlying agreement which materially modifies the legal effect of the instrument has the effect of discharging a guarantor from his or her obligation, unless the guarantor consents to the change." *Levenson v. Haynes*, 1997-NMCA-020, ¶ 21, 123 N.M. 106, 934 P.2d 300. Consent must be affirmative; "acquiescence or consent [to the modification] may not be predicated upon [guarantors'] mere silence or passivity" even if the guarantors know of the change. *Pac. Nat'l Agric. Credit Corp. v. Hagerman*, 1935-NMSC-088, ¶ 25, 39 N.M. 549, 51 P.2d 857. Since we have determined that the guaranties of the Wives are no longer enforceable, we need not address whether they consented to modification of the Agreement and instead focus on whether the Brothers agreed to the modification.

**{38}** Here, although Appellants attempt to paint the modification to the Agreement as unilateral by Luz, the testimony supports the district court's implicit finding that she and Daniel Corona, acting as agent for Samuel and Jose Luis as well as Coronas Concrete Company, agreed to the modification. Luz testified that the Brothers "requested" monies in excess of $70,000. Daniel Corona testified that Coronas Concrete Company "borrowed a total of more than $70,000 from [Luz]." Viewed in the light most favorable to the verdict, this evidence supports an inference that the Brothers not only consented to, but affirmatively requested, alteration of the Agreement to exceed the initial loan amount of $70,000. Consequently, their liability under the guaranties was not nullified by the modification, nor is it limited to $70,000.

**{39}** Finally, Appellants contend that any liability for breach of the settlement agreement must be limited to the amount of the settlement, or $100,000. The district court concluded that the settlement agreement functioned as an accord, which "is a method of discharging a contractual obligation by substituting for such contract an agreement for the satisfaction thereof and performing the substituted agreement." *Nat'l Old Line Ins. Co. v. Brown*, 1988-NMSC-071, ¶ 10, 107 N.M. 482, 760 P.2d 775. As the district court noted, if the obligor unjustifiedly fails to fully perform the accord, "the [obligee] may bring an action on the original claim." *Id.* ¶ 20; *see* S.R. Shapiro, *Comment Note: Remedies for Breach of Valid Accord or Compromise Agreement Involving Disputed or Unliquidated Claim,* 94 A.L.R.2d 504, § 2[c] (1964) ("In other words, if an executory accord is breached by one party, the other party may treat the agreement as rescinded and may revert to the rights and remedies he had under the parties' antecedent relationship[.]").

**{40}** Appellants do not explicitly challenge the district court's finding that the settlement agreement was an accord nor do they argue that it was not breached. Those findings are therefore conclusive. *See* Rule 12-213(A)(4) NMRA ("The argument shall set forth a specific attack on any finding, or such finding shall be deemed conclusive."). That being the case, we discern no basis on which to limit liability to the settlement amount where Luz chose, as permitted by law, to pursue full remedies under the Agreement, the CD Loan, and Land Loan.

**CONCLUSION**

**{41}** We reverse the district court to the extent that it found that (1) the Wives' personal guaranties in the Agreement, which cover the line of credit and CD Loan, are enforceable; and (2) the Wives are liable as borrowers for breach of the Land Loan. Because the Land Loan is not subject to the Agreement, we also reverse the award of attorney fees and costs to the extent any of those fees were incurred in recovery of that loan. We affirm on all other issues and remand for proceedings to determine whether any of the fees awarded are associated with enforcement of the Land Loan and for amendment of the judgment as it pertains to the Wives.

**{42}  IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**M. MONICA ZAMORA, Judge**