OKLAHOMA NATIONAL BANK of Oklahoma City, Plaintiff in Error,

v.

EQUITABLE CREDIT FINANCE CO. et al., Defendants in Error.

No. 42756.

Supreme Court of Oklahoma.

Aug. 3, 1971.

Rehearing Denied Nov. 9, 1971.

Merson, Campbell & Merson, Eagleton, Nicholson & Pate, Oklahoma City, for plaintiff in error.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for defendants in error.

McINERNEY, Justice:

Oklahoma National Bank brought this action to recover on a check drawn by Equitable Credit Finance Co., a partnership composed of the individual defendants in error and others who also transacted business under the name of Equitable Factors. The check in the amount of $48,787.41 was payable to Goodrich Industries, Inc., and was given to purchase accounts receivable. Goodrich deposited the check in its checking account at Oklahoma National which paid checks against the balance created by the deposit. Equitable stopped payment before the check had been paid by the payor bank, Liberty National Bank and Trust Company of Oklahoma City. Equitable's defenses were fraud and failure of consideration based on its claim that the Goodrich receivables were fictitious. Oklahoma National claimed to be a holder in due course. After a trial to the court without a jury, judgment was rendered for defendants. We reverse and remand for a new trial.

Equitable had been factoring Goodrich receivables for five years. Initially, Equitable advanced funds to Goodrich about two days a week; these advances averaged $25,000.00 to $30,000.00 each month. Advances increased in frequency to a daily basis by October, 1966; and in November, 1966, almost all advances exceeded $20,-000.00. Thereafter, the amounts increased rapidly; each advance exceeded $30,000.00 in December, 1966, and $40,000.00 in January, 1967. For several days prior to February 3, 1967, the date of the check involved, each advance exceeded $45,000.00. According to Goodrich officials, the sudden, large increases in receivables resulted from enthusiastic public acceptance of its coin-operated "magic wand" car washing equipment. Some months before February, 1967, Equitable refused to continue increasing the amount advanced unless Goodrich agreed to a proposal to limit each new advance to the amount which had been collected on receivables previously assigned to Equitable. Goodrich accepted this proposal.

Under the factoring agreement, Goodrich was required to deposit all receivable collections in the Goodrich Industries, Inc. —Special Account at Liberty National; only Equitable was authorized to draw against this account. These collections were to be deposited in the form received and were not to be commingled with Goodrich's other funds. At first, Goodrich prepared and delivered the deposits to Liberty; but later, Equitable required Goodrich to deliver the completed deposit slips to its office. About the time the amount of advances began to increase, Equitable discovered Goodrich was depositing its own checks drawn on Oklahoma National. At this time, Equitable reminded Goodrich that this procedure violated their agreement. Goodrich explained that the large "backlog" of orders for car wash equipment and Equitable's advance restriction

had forced it to sell on sight drafts which resulted in faster collections and provided working capital to complete equipment to fill the "backlog" of orders. According to Goodrich, these sight drafts were being deposited in its account at Oklahoma National; therefore, its checks represented collections on accounts assigned to Equitable. On the special account deposit slip, Goodrich listed the customer whose account it claimed had been collected by sight draft; but rather than depositing a check from the customer, Goodrich deposited its own check drawn on Oklahoma National. During the last two months preceding the stop payment order, these checks, usually three or four each day ranging in amount from $5,000.00 to $15,000.00, comprised from 90 to 98 percent of the total deposit for that day.

Despite knowledge of these facts, Equitable continued to accept Goodrich's checks as valid collections until February 3, 1967. On that date, a Friday, after issuing the check involved, Equitable's call to Oklahoma National revealed that the Goodrich checks included as collections in the special account deposit of that date would not clear. Then, on Monday, February 6th, after conferring with counsel, Equitable again called Oklahoma National and learned that some Goodrich checks included in previous deposits were also drawn against insufficient funds and would not clear. With this information, following another discussion with counsel, Equitable refused to make an advance and stopped payment on the check of February 3rd.

Oklahoma National had done business with Goodrich for some 15 to 20 years, including a number of years when Mr. Goodrich operated as an individual. Bank officers knew that Goodrich's business, while growing over the years, had always been under-financed. However, Goodrich had been a satisfactory loan account, and there was a substantial amount outstanding on February 3rd.

For several months prior to February 3rd, Goodrich frequently did not have suf-ficient funds on deposit at Oklahoma National to cover its checks. When this occurred, Goodrich's insufficient checks were given to the bank officer handling the Goodrich loan account. To determine the amount needed to cover these insufficient checks, either this officer would call Goodrich, or Goodrich would call the officer. If Goodrich deposited enough money to cover the checks before the Bank's return check time, they would be held until the next day and paid against that deposit. Each deposit was just enough to cover the insufficient checks leaving a small balance on deposit.

Eventually, this procedure became a daily occurrence and involved large amounts each day; the evidence showed that 123 of the 149 checks reviewed had been handled in this manner. Bank officers knew the larger insufficient checks being held by the Bank were payable to the Goodrich special account; they knew this account was for the deposit of collections on receivables assigned to Equitable; and they knew the deposits made to cover these checks came from Equitable. Thus, the Bank knew that Equitable in effect was paying checks deposited in an account established for its benefit. As these amounts increased, officers of the Bank became concerned; yet their only inquiry was to determine whether Equitable was a reputable firm whose checks would be good.

The trial court's general findings and judgment in favor of Equitable was based on its conclusion that Oklahoma National was not a holder in due course. We must determine whether there is any evidence in the record reasonably tending to support the trial court's judgment. Lumbermens Mutual Casualty Co. v. Iowa Home Mutual Casualty Co., Okl., 405 P.2d 160 (1965).

Our Commercial Code, 12A O.S.1961, § 3–302(1), defines a holder in due course:

"A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Equitable admits that Oklahoma National took the check for value. Therefore, we need consider only the elements of notice and good faith.

 Under the Code, after the defendant has shown that a defense exists, the holder of an instrument has the burden of establishing that he is a holder in due course. 12A O.S.1961, § 3–307(3). In Peoples Bank of Aurora v. Haar, Okl., 421 P.2d 817 (1966), we held that evidence indicating the possibility of a defense places this burden upon the plaintiff. We think Equitable's evidence was sufficient to indicate the possibility of a defense. Thus, the burden rested upon Oklahoma National to prove it took the check in good faith and without notice of any defense. This burden is met if the trier of fact is persuaded that the existence of these facts is more probable than their nonexistence. 12A O.S.1961, § 1–201(8).

Again we turn to the Code for definitions of good faith and notice:

" 'Good Faith' means honesty in fact in the conduct or transaction concerned." 12A O.S.1961, § 1–201(19).

"A person has 'notice' of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." 12A O.S.1961, § 1–201(25).

 Considering the Bank's knowledge that Goodrich was using checks drawn by Equitable to cover checks drawn for Equitable's benefit, we believe the Bank had reason to 'know that Equitable had a defense against Goodrich. The period of time during which Goodrich operated in this manner, the special procedure used daily by the Bank in handling Goodrich's checks and the amounts involved are additional facts and circumstances which persuade us the Bank had notice. 12A O.S.1961, § 1–201(25) (c). Furthermore, the Bank failed to carry the burden of establishing that it took the check in good faith. Officers of the Bank were concerned, but they were primarily interested in determining that Equitable's checks deposited by Goodrich would clear. And, the bank officer in charge of the Goodrich account agreed that he was not concerned about the possibility that Goodrich was defrauding Equitable. Had the Bank handled these transactions in a commercially reasonable manner, it would have attempted to determine why Goodrich was covering numerous checks involving large amounts drawn for Equitable's benefit with checks drawn by Equitable. Accordingly, we conclude the Bank failed to sustain its burden of proving that it was a holder in due course.

 Our determination that Oklahoma National was not a holder in due course does not compel the conclusion that the judgment of the trial court must be affirmed. Oklahoma National was the holder of the instrument. 12A O.S.1961, § 1–201(20). And the holder of an instrument is entitled to recover on it unless the defendant establishes a defense. 12A O.S.1961, § 3–307(2). To establish a defense, the defendant has the burden of proving the defense alleged in his answer by a preponderance of the evidence. Persson v. McCormick, Okl., 412 P.2d 619, 621 (1966). But, if the defense alleged is a total failure of consideration, the defendant will be allowed to prove a partial failure of consideration. Hart Industrial Supply Co. v. Craig, Okl., 405 P.2d 93, 96 (1965). Where only a partial failure of consideration is established, it constitutes a defense pro tanto against one not a holder in due course. Thus, a recovery by the holder is precluded only to the extent of the partial

failure of consideration. Sanco Finance Co. v. Canon, Okl., 391 P.2d 817, 818 (1964).

 Equitable alleged that the check for $48,787.41 was procured by fraud and without consideration, because the receivables purchased with the check were false and fictitious. Hence, it was necessary for Equitable to establish by a preponderance of the evidence that the accounts purchased were in fact false and fictitious. Persson v. McCormick, supra. Implicit in the trial court's judgment in favor of Equitable was a finding that Equitable had sustained this burden. We cannot agree with the trial court.

Equitable had the right to inspect Goodrich's account books and did so on a monthly basis. One of these inspections was made on the day before the check involved was drawn; another was made one day after the stop payment order. The second inspection revealed discrepancies in Goodrich's accounts which were not evident at the prior inspection. Based on these inspections, two officers of Equitable testified it was their opinion that some of Goodrich's accounts were fictitious. From this evidence, it could be inferred that some accounts purchased by Equitable were fictitious, but there is no evidence to show which of the specific accounts purchased with the check for $48,787.41 were fictitious. If competent evidence is offered by Equitable to prove that some of the accounts purchased on February 3rd were in fact fictitious, then Equitable is entitled to have the amount paid for the fictitious accounts deducted from the amount of the check. If not, Oklahoma National is entitled to recover the full amount of the check. Sanco Finance Co. v. Canon, supra. Otherwise, Equitable would receive the value of the valid accounts purchased without giving any consideration for them. Thus, the judgment of the trial court must be reversed, and the case will be remanded for a new trial limited to determining which of the accounts purchased by Equitable with the check for $48,787.41 were fictitious.

Reversed and remanded for a new trial.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON and IRWIN, JJ., concur.

BLACKBIRD and LAVENDER, JJ., concur in part and dissent in part.