2001 OK CIV APP 130

**The STATE of Oklahoma, ex rel. Mark L. GIBSON, District Attorney, Plaintiff/Appellee,**

v.

**1997 DODGE 350 ONE–TON DUALLY PICKUP, White in Color, Bearing Arizona License Number EW5031, Vin# 3B7MC33D9VM577896; An Enclosed Bumper–Pull Car Trailer, White in Color; A Standing Commercial Red–Colored Toolbox in a Purple–Colored Container; And a Chevrolet Monte Carlo Nascar Racing Car, White in Color With # 22 Printed on the Sides and Roof, Defendants,**

**Donald E. Holcomb, Jr., Appellant.**

**No. 95,708.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 21, 2001.

Mark L. Gibson, District Attorney, R. Brian Surber, Assistant District Attorney, Newkirk, OK, for Plaintiff/Appellee.

Thomas L. Wright, El Paso, TX, for Appellant.

BUETTNER, Presiding Judge:

¶ 1 Donald E. Holcomb, Jr., (Holcomb) appeals from the trial court's order finding that Holcomb was not an innocent owner of the property in question and ordering the property forfeited to Plaintiff/Appellee The State of Oklahoma, ex rel. Mark L. Gibson, District Attorney (State). The forfeiture action was based on the discovery of marijuana in a trailer being pulled by a pickup owned by Holcomb, but being driven by someone else. Because we find no error in the order of forfeiture, we affirm.

¶ 2 On May 12, 2000, officers stopped a 1997 Dodge 350 pickup on I–35 in Kay County. The pickup was pulling a trailer containing a NASCAR race car and a large tool chest. The driver of the pickup was Joseph Horvath. Horvath consented to a search of the pickup and trailer which revealed 760 pounds of marijuana concealed in the trailer. The Notice of Seizure and Forfeiture was filed May 17, 2000. The Notice alleged that these vehicles had been:

> used unlawfully to facilitate the transportation of a controlled dangerous substance for the purpose of distribution of a controlled dangerous substance as defined in 63 O.S. § 2–503, and in which vehicles said controlled dangerous substance was unlawfully kept, deposited, or concealed, and/or which vehicles were used to transport said controlled dangerous substance as listed in 63 O.S. § 2–204, to wit: Marijuana, and which toolbox was used as equipment to transport a controlled dangerous substance for the purpose of distribution, importation and/or exportation and which trailer was used as a container for a controlled dangerous substance and is therefore forfeitable as set forth in 63 O.S. § 2–503.

¶ 3 Holcomb filed his Answer and Claim to the property June 7, 2000. Holcomb asserted that he is the owner of Holbert Auto Racing, a NASCAR racing company in Mesa, Arizona. Holcomb claimed to be the owner of all the property seized. Holcomb asserted that the race car had been damaged in a wreck in a race in California and was being transported to North Carolina for repairs. Holcomb further asserted that he would normally have made the trip but was unable to because his daughter was hospitalized in Arizona at the time. Holcomb alleged that he had directed Horvath, his employee, to take the car to North Carolina on I–40 and that Horvath did not have permission to leave that route and be on I–35 at the time he was stopped. Holcomb also asserted that Horvath did not have permission to transport controlled dangerous substances. Holcomb attached the notarized statement of Horvath that Holcomb "had no involvement or responsibility for the alleged trafficking of drugs for which I am currently being charged in Kay County, ..."

¶ 4 Trial was held November 9, 2000. The parties stipulated that the allegations in the notice of forfeiture were true and that the items were forfeitable. Trial was therefore limited to the issue of Holcomb's innocent owner defense. The trial court noted case law in Oklahoma that innocent ownership is a defense and once the issue of forfeitability has been established, the burden shifts to the party claiming to be an innocent owner to prove such status. Holcomb did not object to this statement by the trial court.

¶ 5 Holcomb testified that he owns Holbert's Hawg Kingdom and Auto Racing in Mesa, Arizona that is involved in motorcycle and race car sales, motorcycle parts and repairs, as well as auto racing. Holcomb testified that he owns five race cars in addition to the one seized in the instant case. Holcomb explained that the car seized in the instant case is a Winston Cup car and that his team sponsor paid $34,000 for the car. Holcomb testified that in April 2000 the car had been in two races and that at the race in Fontana, California, the car had a tire blowout and hit the barrier wall. Holcomb decided to send the car back to Denver, North Carolina to have Tim Suggs at Body Dynamics repair the damaged bodywork on the car. Holcomb explained that the body repair shops in North Carolina are able to do bodywork repair in such a way that the car gains speed because of its contours. Holcomb testified that he took the car to his shop in Mesa, Arizona for a week. He further testified that he planned to deliver the car to North Carolina himself until his 15 year old daughter was hospitalized for seizures.

¶ 6 Holcomb explained that he then hired Horvath to deliver the car to North Carolina. Holcomb testified that Horvath had been his employee a year and a half before, but by May 2000 he was simply a "subcontract driver" for when Holcomb "needed somebody to fill in when I couldn't go on the road myself." Holcomb testified that he discussed the route with Horvath and that Horvath was supposed to go north in Arizona to Flagstaff and then take I–40 all the way to North Carolina. Holcomb stated that Horvath did not have

his permission to have the car on I–35 in Kay County.

¶ 7 Holcomb also testified that he helped load the car into the trailer in Mesa and that there was no marijuana in the trailer when he loaded it. Holcomb further explained that he did not know where the marijuana came from or how it got into the trailer and he testified that he did not know that Horvath was going to use the trailer to transport marijuana. Holcomb testified that he did not give Horvath permission to transport marijuana in the trailer. Finally, Holcomb stated that Horvath had been indicted for possessing the marijuana while Holcomb had not been indicted.

¶ 8 On cross-examination, Holcomb explained that he hired Horvath to deliver the car on a Monday, Horvath left Arizona two days later on Wednesday, and was stopped in Kay County two days after that on Friday May 12, 2000. Holcomb explained that it takes 16 hours to drive from Mesa to Oklahoma City. Holcomb acknowledged that a year or two before the instant incident, Horvath had lived for six months in a different but similar race car trailer behind Holcomb's business. Holcomb also agreed that he had co-signed on Horvath's bail to get out of jail following the instant arrest.

¶ 9 The State then questioned Holcomb about a prior conviction, which he admitted. Holcomb objected, stating that a nine year old conviction was not relevant to the proceedings and that evidence of other crimes is not admissible to prove acts in conformity therewith. The trial court admitted the evidence for impeachment purposes. Holcomb then indicated that he had been convicted of distribution of marijuana, but added "I think it said heroin and cocaine on the deal, too." Holcomb then objected to any further questions on that issue. The trial court asked Holcomb when and where he was convicted and Holcomb responded that he was convicted in federal court in Arizona in 1987. The trial court then stated "I believe that's all we need to know about it." The State then made an offer of proof that the details of the prior conviction were relevant because of similarities to the instant case including the manner and method of operation, the sub-

stances involved, and the use of the racing business to facilitate the crime. The trial court then allowed the State to question Holcomb on the details of his prior conviction.

¶ 10 Holcomb explained that he worked on cars for people involved in a drug conspiracy and that he was "a small player in the deal." Holcomb testified that he pleaded guilty to transportation of 100 pounds of marijuana. Holcomb added that he was a cocaine addict at the time, but that he had not used cocaine since 1990. Holcomb acknowledged that at the time of his arrest he was employed by his father at Holcomb Auto Racing and that some of that business's assets were seized when he was arrested but that they were returned two days later. Holcomb denied that he had concealed marijuana in race car tires as part of the 1987 conspiracy. Holcomb admitted that a dually pickup was seized in his prior arrest, but he asserted that it was returned to him two days later. Holcomb denied having any knowledge of how the larger conspiracy operated and he denied ever using race cars to transport drugs.

¶ 11 Holcomb testified that he first met Horvath in 1996 or 1997. He explained that Horvath had made cross-country trips for him about 15 times to deliver cars to races, pickup cars or deliver parts. Holcomb indicated that when the race car had been damaged in an earlier wreck in Phoenix, he had hired Horvath to drive it to North Carolina for repairs then. Holcomb explained that he had only seen Horvath one time since Horvath's arrest in Kay County. On that occasion, Horvath came into Holcomb's business "to apologize for what he had done." Holcomb explained that he co-signed on Horvath's bail because Horvath had been in jail a couple of weeks and Holcomb did not believe he was a flight risk.

¶ 12 Don Robl testified that he works with Holcomb in his pit crew and is in charge of the tires on Holcomb's race cars. Robl testified that he is with Holcomb and his family almost every weekend at races and that Holcomb is not a drug dealer. Robert Fletcher testified that he is a business owner in Phoenix. Fletcher testified that he had known Holcomb for five or six years through racing groups. Fletcher testified to being around

Holcomb extensively while involved in racing the car seized in the instant case. Fletcher concluded that Holcomb is not a drug dealer or drug user.

¶ 13 Sergeant David H. Wright, a police supervisor with the Arizona Department of Public Safety testified that he was involved in investigating Holcomb for activities leading to Holcomb's 1987 conviction. Sergeant Wright testified that Holcomb pleaded guilty to three instances of delivering 100 pounds or more of marijuana. Sergeant Wright further explained that Holcomb admitted to constructing false compartments in vehicles for the purpose of concealing drugs. Sergeant Wright also testified that in his interview with Holcomb during that investigation, Holcomb admitted to distributing drugs on 8 or 10 occasions. Sergeant Wright also testified that Holcomb Racing Enterprises was a "facade" for the conspiracy and that Holcomb had admitted to him that he knew the source of the marijuana he transported as part of the conspiracy. Two of those sources were the Barba brothers, who had been engaged in drug trafficking as recently as six months prior to trial. Sergeant Wright conceded he had no evidence to link Holcomb to the Barba Brothers' recent illegal activities. Sergeant Wright characterized Holcomb as a lieutenant in the Rene Meza Valenzuela narcotic trafficking organization. Sergeant Wright acknowledged that his last contact with Holcomb was in 1991. He also was aware that while Holcomb received a two year sentence, at least one of the conspirators received a 30 year sentence. Sergeant Wright testified that he had only known of one instance of a racing company being used to conceal the distribution of drugs and that was Holcomb's business as it was used in the 1987 conspiracy.

¶ 14 The trial court filed its Order of Forfeiture November 28, 2000. The trial court determined that Holcomb had not met his burden of proving that he was an innocent owner entitled to having his property returned. Holcomb now appeals that order. Holcomb asserts that the trial court erred in admitting the evidence detailing his 1987 conviction. Holcomb also alleges that placing the burden on him to prove that he is an

innocent owner is unconstitutional, and that the trial court abused its discretion in finding that Holcomb failed to meet that burden of proof.

¶ 15 The property in the instant case was subject to forfeiture under 63 O.S.Supp.1997 § 2–503 (A)(4). The innocent owner defense is afforded by 63 O.S.Supp.1997 § 2–503 (A)(4)(b). Those subsections provide:

A. The following shall be subject to forfeiture:
* * *
4. All conveyances, including aircraft, vehicles, vessels, or farm implements which are used to transport, conceal, or cultivate for the purpose of distribution as defined in Section 2–101 of this Title, or which are used in any manner to facilitate the transportation or cultivation for the purpose of sale or receipt of property described in paragraphs 1 or 2 of this subsection or when the property described in paragraphs 1 or 2 of this subsection is unlawfully possessed by an occupant thereof, except that:
* * *
b. no conveyance shall be forfeited under the provisions of this section by reason of any act or omission *established by the owner thereof* to have been committed or omitted without the knowledge or consent of such owner, and if the act is committed by any person other than such owner the owner shall establish further that the conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any state; (Emphasis supplied)

¶ 16 We first address Holcomb's assertion that the trial court erred in admitting evidence of his 1987 conviction for transporting marijuana. The Oklahoma Evidence Code provides that evidence of prior bad acts is not admissible to prove character or in order to prove actions in conformity therewith. 12 O.S.1991 § 2404 (B). However, that subsection provides several exceptions to its rule:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of

a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as *proof of* motive, opportunity, intent, preparation, *plan, knowledge,* identity *or absence of mistake or accident.* (Emphasis added).

The evidence of Holcomb's prior conviction was admitted for the purpose of showing that he had knowledge of how to use a racing operation as a cover for a drug distribution operation. The trial court has discretion in deciding the relevance of proffered evidence and whether to admit relevant evidence, and we will not reverse based on the admission or rejection of evidence absent an abuse of that discretion. *Jordan v. Cates,* 1997 OK 9, 935 P.2d 289, 293; *State, ex rel. Dept. of Public Safety v. 1988 Chevrolet Pickup,* 1993 OK CIV APP 6, 852 P.2d 786, 788. We have reviewed the transcript and find that the trial court was responsive to Holcomb's objections and carefully considered whether to admit the evidence of Holcomb's prior conviction. It is clear that the trial court admitted the evidence for the purpose of showing Holcomb had knowledge and opportunity to be involved in transporting controlled substances under cover of a legitimate racing operation. We also note that this court has approved of admission of prior drug transactions in order to support forfeiture actions. See *State, ex rel. McGehee v. 1987 Oldsmobile Cutlass,* 1993 OK CIV APP 177, 867 P.2d 1354, 1356, which explained:

> ... the "innocent owner" defense is not established by mere denial of actual knowledge. The inquiry here is whether an owner consented to or had guilty knowledge-i.e., actual knowledge or reason to know-of the improper use of the vehicle. Resolving that issue requires consideration of prior drug activities and/or arrests, reputation in the community, and any other circumstance bearing on the existence of guilty knowledge on the part of the owner.

This passage supports our decision that the trial court did not abuse its discretion in admitting evidence that Holcomb had been convicted in a prior, similar drug distribution effort.

¶ 17 We next address Holcomb's claims that placing the burden of proving the innocent ownership defense on him is unconstitutional.[1] We note that the statute requires the owner to establish that the illegal acts were conducted without the owner's knowledge or consent. 63 O.S.Supp.1997 § 2–503 (A)(4)(b). Additionally, this court has interpreted Section 2–503(A)(4)(b) as placing the burden of proving innocent owner status on the claimant seeking the protection of that status. *State, ex rel. McGehee, supra,* at 1356. The statute provides for an affirmative defense to a forfeiture action. A party asserting an affirmative defense bears the burden of proving that defense by a preponderance of the evidence. See *A.L. Jackson Chevrolet, Inc. v. Oxley,* 1977 OK 85, 564 P.2d 633, 636; *Okla. Natl. Bank v. Equitable Credit Finance Co.,* 1971 OK 104, 489 P.2d 1331, 1334.

¶ 18 Holcomb argues that this procedure effectively allows the State to take his private property without having to prove its case. This argument ignores the fact that Section 2–503 requires the State to prove the property is forfeitable in the first place, and only then does a claimant bear the burden of proving his defense to such forfeitability. In the instant case, Holcomb stipulated that the property was forfeitable. Accordingly, the only issue at trial was whether Holcomb was an innocent owner, which was a defense put forward by Holcomb and which he had the burden of proving. Holcomb argues that the right to ownership of private property is constitutionally protected and that the State must therefore bear the burden of proving that such property can be taken. We agree. However, the State bears this burden when it proves forfeitability-to which Holcomb stipulated. The burden then shifted to Holcomb to prove why the property should not be forfeited, despite its forfeitable character.

¶ 19 Holcomb also urges that the innocent owner statute denies his constitutional right to equal protection because, in certain situa-

---

1. As noted above, Holcomb failed to object when the trial court explained that the burden of proving this defense rested on Holcomb. Holcomb also did not raise the issue of whether placing the burden on him is unconstitutional.

tions in which the State seeks to take private property, the burden of proof rests on the State. As we have noted above, the burden of proving that property is forfeitable does indeed rest on the State, as urged by Holcomb. It is the burden of proving a defense to that forfeiture which rests on the would-be innocent owner. This provision does not violate Holcomb's right to equal protection of the law.

¶ 20 Holcomb next argues that placing the burden of proving that he is an innocent owner violates Section 15 of Article II of the Oklahoma Constitution which provides, in part, that "no conviction shall work a forfeiture of estate." We note that the Oklahoma forfeiture provisions have been held to be remedial, rather than penal. *State ex rel. Wood v. Gold/Blue 1988 Chevrolet Blazer,* 1996 OK CIV APP 86, 924 P.2d 792, 793. The forfeiture statutes are an exercise of the police power to remedy " 'past offending uses of property and to prevent future offending uses,' " as well as to "utilize funds derived from forfeitures to 'make the sovereign whole for the detriment attributable to, or incurred in the abatement of, nuisance-like uses of property that are directly linked to the greater societal problem of drug abuse.' " *Id.,* citing *McGehee, supra,* 888 P.2d at 1037. This language demonstrates that Holcomb's property has not been forfeited as punishment for his conviction. Holcomb has presented no authority directly holding that the burden of proof placed on him in the instant case violated his constitutional rights.

¶ 21 Holcomb's final assertion of error is that the evidence did not support the trial court's decision that Holcomb was not an innocent owner of the property. We have detailed the evidence above. Sufficient evidence in the record supports the trial court's decision that Holcomb was not an innocent owner in this case. Holcomb had used his racing business as a cover for drug transpor-

tation in the past, Holcomb had access to the truck and trailer until two days before it was stopped in Oklahoma. Further, Holcomb testified that Horvath only had notice two days before he left Arizona with the truck and trailer. We agree with the State that the trial court could have found that Horvath could not have orchestrated such a large shipment with such short notice. Despite Holcomb's testimony that he had no knowledge of the 760 pounds of marijuana being transported in his racing trailer, on the evidence presented the trial court could have found that Holcomb failed to carry his burden of proving that he was an innocent owner entitled to the return of the property.

¶ 22 AFFIRMED.

¶ 23 GARRETT, J., concurs.

¶ 24 HANSEN, C.J., dissents.

HANSEN, C.J., dissenting:

¶ 1 The majority bases its ruling the trial court was correct on *State, ex rel. McGehee v. 1987 Oldsmobile Cutlass,* 1993 OK CIV APP 177, 867 P.2d 1354, 1356. That Court of Civil Appeals decision (certiorari not sought) to which this judge strongly dissented, did not deal with prior bad acts of the innocent owner, but rather with acts of the owner's son who was in possession of the vehicle at the time of the forfeiture. In my view, Holcomb met his burden through his testimony and that of his witnesses. Holcomb's ten year old conviction was improperly admitted to rebut this evidence.

¶ 2 I therefore dissent.