This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**IRENE CAMPBELL, f/k/a**
**IRENE MONTANO,**

Petitioner-Appellant,

**v.**                                                    **NO. A-1-CA-35487**

**JOHNNY L. LIEB, Personal**
**Representative of the Estate**
**of D.B. LIEB, Deceased,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Eric D. Dixon
Portales, NM

for Appellant

Rowley Law Firm, L.L.C.
Richard F. Rowley II
Clovis, NM

for Appellee

## MEMORANDUM OPINION

**FRENCH, Judge.**

{1}     Petitioner Irene Campbell appeals from the order of the district court dismissing her petition for a declaratory judgment and the imposition of a constructive trust on property initially conveyed to her by D.B. Lieb through a revocable transfer on death deed. Because D.B. Lieb's attorneys-in-fact properly revoked the deed prior to D.B. Lieb's death, we affirm the district court's order.

**BACKGROUND**

{2}     In May 1996, D.B. Lieb appointed his son, Johnny Lieb, as his attorney-in-fact, and his other son, Randy Lieb, as his alternate attorney-in-fact. In June 2011, D.B. Lieb executed a revocable transfer on death deed, conveying his interest in real estate located in Roosevelt County to his caretaker, Petitioner, upon his death. D.B. Lieb himself, not his attorneys-in-fact, signed the deed to Petitioner. In March 2014, Johnny Lieb and Randy Lieb, as D.B. Lieb's attorneys-in-fact, executed an instrument revoking "all prior transfer on death deeds," specifically including the June 2011 deed conveying property to Petitioner upon the death of D.B. Lieb. Johnny Lieb testified that he revoked the transfer on death deed because he wanted to preserve his father's estate and assets, and because he anticipated "extensive nursing home expenses."

{3}     D.B. Lieb passed away about five months after the revocation. Because the Uniform Power of Attorney Act (UPAA), NMSA 1978, §§ 45-5B-101 to -403 (2007, as amended through 2011), authorized D.B. Lieb's attorneys-in-fact to revoke the

deed prior to D.B. lieb's death if it was in his best interest and Petitioner failed to present evidence that it was not, we affirm the district court. Johnny Lieb was one of four beneficiaries of his father's estate and, presumably, Randy Lieb was also.

**{4}** After making a claim against D.B. Lieb's estate for the real property described in the transfer on death deed—which was denied by the Personal Representative of the estate based upon the revocation of the transfer on death deed—Petitioner petitioned for declaratory judgment and sought the imposition of a constructive trust. Petitioner brought her claim in equity, seeking a declaration that the revocation was null and void because it was contrary to D.B. Lieb's express wishes and, therefore, also a breach of the fiduciary duties owed to him by his attorneys-in-fact. Both Johnny Lieb and Petitioner testified at a bench trial before the district court. Lieb moved to dismiss after Petitioner rested, arguing that the Uniform Transfer on Death Act, NMSA 1978, § 45-6-401 (2013), makes it clear that the transfer on death deed could have been revoked at any time prior to D.B. Lieb's death, and the UPAA, Section 45-5B-106, authorizes an attorney-in-fact to execute a revocation of a transfer on death deed. The district court granted Lieb's motion to dismiss, concluding in its written order that the transfer on death deed was properly revoked by Johnny Lieb as attorney-in-fact and Randy Lieb as alternate attorney-in-fact.

**{5}** Petitioner appeals from the district court's order dismissing her petition with prejudice, entered on April 5, 2016.

**DISCUSSION**

**{6}** We understand the district court to have dismissed Petitioner's claim pursuant to Rule 1-041(B) NMRA. *See id.* ("After the plaintiff, in an action tried by the [district] court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."); *see also Hull v. Feinstein*, 2003-NMCA-052, ¶ 13, 133 N.M. 531, 65 P.3d 266 (explaining that under Rule 1-041(B) "the [district] court in a non-jury trial may grant a motion to dismiss at the conclusion of the presentation of the plaintiff's evidence if the plaintiff is not entitled to relief based upon the evidence and the law"). In ruling on a Rule 1-041(B) motion, the district court "acts as a fact[-]finder who weighs the evidence and passes judgment on whether the plaintiff has proved the necessary facts to warrant the relief asked." *Padilla v. RRA, Inc.*, 1997-NMCA-104, ¶ 17, 124 N.M. 111, 946 P.2d 1122 (internal quotation marks and citation omitted). In making its findings, the district court is "entitled to weigh the evidence[,] including [the p]laintiff's testimony, and to determine the weight it [is] entitled to receive in the court's judgment as the trier of

4

fact." *Hull*, 2003-NMCA-052, ¶ 14. We will sustain the grant of a Rule 1-041(B) motion as long as the decision of the district court is "rationally based on the evidence[,]" and "[b]ecause Rule 1-041(B) leaves the fact finding to the [district court], we must view the evidence in the light most favorable to support the findings and judgments of the [district court]." *Padilla*, 1997-NMCA-104, ¶ 17 (internal quotation marks and citation omitted).

**{7}** Petitioner argues that "any conveyance of the principal's property that either materially benefits the agent or is for the agent's own use is presumed to be fraudulent[,]" and because Johnny Lieb stood to benefit from revoking the transfer on death deed, the revocation is void. We begin by summarizing the law concerning the duties an agent owes to a principal, specifically those sections of our statutes that address an agent's authority to enter into transactions that are in the principal's best interest but from which the agent also benefits personally. We then turn to the evidence as presented at trial.

**{8}** The UPAA, specifically Section 45-5B-114, describes the obligations that an attorney-in-fact owes to the principal, aside from those detailed in the authorizing instrument. An agent who has accepted appointment "shall: (1) act in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest; (2) act in good faith; and (3) act only within

5

the scope of authority granted in the power of attorney." *See* Section 45-5B-114(A). Unless otherwise provided in the power of attorney, an agent must also "act loyally for the principal's benefit" and "act so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest[.]" Section 45-5B-114(B)(1), (2).

{9} Importantly, the attorney-in-fact must also attempt to preserve the principal's estate plan if preserving the estate is consistent with the principal's best interests based on factors that include "the principal's foreseeable obligations and need for maintenance[,]" and if otherwise done in accordance with Section 45-5B-114(A). Section 45-5B-114(B)(6)(b). While briefly mentioned in her brief in chief, Campbell did not develop the separate argument that Section 45-5B-114(A)(1), requires an agent to honor the principal's stated desires, if known. This Court will not review an argument that is not adequately developed. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701; *see also Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument).

{10} Contrary to the position Petitioner urges us to accept on appeal, the Uniform Power of Attorney Act insulates an attorney-in-fact who acts in the best interest of the principal, even though the attorney-in-fact may benefit personally from the action

taken. Our statute makes it clear that "[a]n agent that acts with care, competence and diligence for the best interest of the principal *is not liable solely because the agent also benefits from the act or has an individual or conflicting interest in relation to the property or affairs of the principal.*" Section 45-5B-114(D) (emphasis added).

{11}     Finally, we note that Petitioner's position—that all transactions from which an attorney-in-fact stands to benefit personally must be deemed fraudulent—would, in effect, preclude an attorney-in-fact from engaging in the actions and carrying out the duties for which the principal specifically appointed him, for fear that his actions may be declared void. Subject to the requirements of Section 45-5B-114(A)(1), the purpose of the power of attorney is to give to another person the authority to act in the principal's best interest where the principal is unable to do so for himself. *See* § 45-5B-114(A)(1), (B)(1). As long as Johnny Lieb acted with care, competence, and diligence for the best interests of D.B. Lieb, the fact that he benefitted from the revocation is not, in and of itself, a violation of his duties as an agent pursuant to the power of attorney. *See* § 45-5B-114(B), (D). Notably, a document that is properly executed under a power of attorney is to be given the same effect as if signed by the principal. Section 45-5B-201(G) ("An act performed by an agent pursuant to a power of attorney has the same effect and inures to the benefit of and binds the principal and the principal's successors in interest as if the principal had performed the act.").

{12} Thus, we turn to the evidence presented at trial to consider whether Petitioner presented evidence to show that Johnny Lieb acted contrary to his duties set out in Section 45-5B-114. Viewing the evidence in the light most favorable to support the findings of the district court, we conclude that the district court's dismissal was rationally based on the evidence. *Padilla*, 1997-NMCA-104, ¶ 17. ("Accordingly, we will sustain the grant of a Rule 1-041(B) motion . . . so long as the decision of the trial judge is rationally based on the evidence.").

{13} The district court announced its findings at the end of the hearing and concluded that the transfer on death deed was properly revoked based on Section 45-5B-114(B)(6)(b) of the UPAA and on Johnny Lieb's testimony that his decision to revoke the deed was based off of the need to preserve D.B. Lieb's estate for his foreseeable obligations and maintenance. *See* § 45-5B-114(B)(6)(b) (describing an agent's duty to preserve the principal's estate plan and to act in the principal's best interest based on, among other things, "the principal's foreseeable obligations and need for maintenance").

{14} The power of attorney gave to Johnny Lieb and Randy Lieb the authority

> [t]o do and execute all or any of the following acts, deeds and things: to manage and conduct all of [D.B. Lieb's] affairs of every kind and nature, specifically including, but not limited to, executing all instruments deemed necessary by persons, firms, corporations, states, or the United States and political subdivisions or agencies of either; to borrow, including promissory notes, mortgage, pledge, hypothecate, secure, deed,

8

> sell, transfer, convey, elect, pay, receive, release, deposit, cash, endorse, indemnify, lease, exchange, sue, compromise, all as to personal, real or mixed property. . . giving [D.B. Lieb's] said attorney full power and authority to do everything whatsoever necessary to be done in the premises as fully and as effectively as I could do if personally present, with full power of substitution and revocation[.]

Therefore, at the time of the revocation, the provisions of the power of attorney provided D.B. Lieb's sons with the authority to manage all of his affairs, expressly including the authority to execute deeds, and to sell, transfer, and convey his real property. Revoking the transfer on death deed falls squarely within the permitted authority described in the power of attorney. *See* § 45-5B-114(A)(3) (detailing an agent's duties, which requires the agent to "act only within the scope of authority granted in the power of attorney").

{15} Johnny Lieb testified that his father gave him the power of attorney in 1996 because D.B. Lieb was prone to letting his emotions get the best of him and knew that he needed assistance managing his assets. He recalled family meetings that occurred with his father, mother, and brother Randy Lieb, noting "[my father] would give [anyone] money or help or whatever he could give them he'd give it to them and [my mother] wanted us to . . . have a rein on that . . . that power of attorney was created at that time for us to help preserve [my father's] assets[.]" He stated, "[m]y purpose was to take care of him . . . he signed the power of attorney to see that we protected him from himself[.]"

9

{16}   More specifically, with regard to the property at issue, Johnny Lieb testified that he did not attempt to stop his father from executing the transfer on death deed because he knew it was revocable, and he stated that he believed his role as his father's attorney-in-fact was to take care of his father "and to be in a position to intercept whenever there was a problem . . . when [his father] was vulnerable and [his father] had a definite vulnerability to giving gifts to people[.]" Johnny Lieb acknowledged that he knew D.B. Lieb wanted to give the property to Petitioner, but he also understood that as D.B. Lieb's attorney-in-fact, he was responsible for managing D.B. Lieb's affairs in a manner consistent with D.B. Lieb's best interests. Johnny Lieb articulated several times throughout his testimony the reasons that the revocation was in D.B. Lieb's best interests. *See* § 45-5B-114(A)(1), (B)(1) (explaining that an agent must "act in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest[,]" and must "act loyally for the principal's benefit"). Johnny Lieb also testified that the only reason he signed the revocation of the transfer on death deed was because he did not believe the gift to Petitioner was appropriate given that she had always been fairly compensated for her work. He wanted to preserve his father's estate and assets in anticipation of "extensive nursing home expenses." Johnny Lieb testified:

> My reasoning . . . for signing this revocation was to maintain some assets
> that would replace what my brother and I were going to have to come up

10

with out of our own pocket, . . . [and] preserve some of these assets even to pay back what we had to come up with[.] . . . [A]rrangements were made for [my father] to try to get on Medicaid[.] . . . At that time we paid [Petitioner] $20,800 for that whole year that she was to take care of [my father.] He was in the nursing home[.] . . . And we also spent about $12,000 to prepay on the funeral.

He also stated that he did not take into consideration the value of the property upon revocation because he had "plenty of wealth of [his] own" and was therefore unconcerned about whatever amount he could potentially inherit. Johnny Lieb's motivation was therefore consistent with the obligations of an agent acting on behalf of a principal as specified in Section 45-5B-114(B)(6): an agent shall "attempt to preserve the principal's estate plan" considering "the principal's foreseeable obligations and need for maintenance[.]" Section 45-5B-114(B)(6)(b).

{17} Based on the provisions of the power of attorney, the testimony concerning the reasons for the revocation of the deed, Johnny Lieb's disinterest in his inheritance and Petitioner's failure to present evidence that the attorney-in-fact's actions were inconsistent with D.B. Lieb's best interests, we find no error in the district court's decision to dismiss Petitioner's claim at the close of Petitioner's case and we conclude that it was rationally based on the evidence presented.

11

**CONCLUSION**

{18}     We affirm the district court's dismissal of Petitioner's petition.

{19}     **IT IS SO ORDERED.**

_____

**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**JULIE J. VARGAS, Judge**

_____

**HENRY M. BOHNHOFF, Judge**